■ In the Matter of SANJAYLYN COMPANY, Petitioner, v STATE TAX COMMISSION, Respondent.—Mercure, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which sustained a tax assessment on gains derived from certain real property transfers under Tax Law article 31-B.

Petitioner owned three contiguous parcels of realty near Kennedy Airport in Queens County, each improved with a warehouse and office space. The first parcel (hereinafter Parcel A) was purchased in 1971 from Daniel Rubin for $307,000, the second (hereinafter Parcel B) was purchased in 1977 from Shirley Rubin and Alan R. Salamon, as trustees, for $328,000, and the third (hereinafter Parcel C) was purchased in 1979 from Shirley Rubin and Alan R. Salamon, as trustees, for $631,000. Petitioner made no changes to any of the buildings

and rented all the space to tenants. Separate books and records were kept for each of the buildings by individual in-house bookkeepers, and the buildings had independent mortgages and separate utilities and were assessed independently.

Petitioner employed Sholom & Zuckerbrot Realty Corporation as its agent to sell the three parcels and entered into a separate brokerage agreement for each parcel on August 14, 1985. The broker placed several advertisements for the parcels which specified that one or all of the parcels could be purchased and listed both individual and package prices. Porterfield Realty Corporation agreed to purchase all three properties from petitioner by separate contracts of sale executed September 10, 1985 providing for the purchase of Parcel C for $950,000, Parcel B for $700,000 and Parcel A for $600,000.[1] On the same day, petitioner also signed an "Agreement in Event of Default", which gave both petitioner and the purchaser the option to treat a breach by the other party of its obligations under one contract as a breach under all the contracts. In that agreement, petitioner also promised to advise the taxing authorities of the fact that it sold three parcels for an aggregate price of over $1,000,000 and that "a default under any of the contracts is deemed a default under all of the contracts". The agreement provided further that petitioner could make payment of the gains tax under protest. Title to Parcel C closed on October 7, 1985, Parcel B on November 27, 1985 and Parcel A on December 5, 1985.

The principal issue on review is whether petitioner is entitled to the statutory exemption from the real property transfer gains tax for transfers of property where the consideration is less than $1,000,000 (Tax Law § 1443 [1]). Respondent determined that the three transactions should be treated as one sale, resulting in a total consideration of $2,250,000 and that, therefore, the exemption did not apply. Petitioner challenges this determination, contending that respondent exceeded its statutory authority to aggregate the consideration for separate transfers of real property (Tax Law § 1440 [7]) and that its findings were unsupported by substantial evidence. We disagree.

There was substantial evidence to support respondent's finding that the transfers constituted one sales transaction for more than $1,000,000, subject to real property transfer gains

1. Subsequently, Porterfield Realty Corporation assigned its rights to North Shore Corporation, and amended transferor and transferee questionnaires were filed.

tax under Tax Law § 1441. The circumstances surrounding the sale of the three contiguous parcels clearly indicate that it was actually a single business transaction (see, Matter of Bombart v Tax Commn., 132 AD2d 745). The three properties central to this proceeding were all acquired either from Daniel Rubin directly or from his trustees, held by petitioner for investment purposes, offered for sale with the same broker, either individually or as a package, and sold to a common purchaser with three contracts of sale and an "Agreement in Event of Default" executed on the same day. Said agreement gave both parties the option to treat the breach of 1 of the contracts as a breach of all 3. It is obvious from these documents that petitioner intended to sell and the purchaser bought the three parcels in one transaction. Because the true nature of this sale was a single transaction, the consideration from the transfer of petitioner's interest in real property consisting of three buildings on contiguous lots, all generating rental income, was properly aggregated, both under Tax Law § 1440 and 20 NYCRR 590.42.

This court sustained aggregation in similar circumstances in Matter of Bombart v Tax Commn. (supra). In that case, as here, the seller entered into three separate contracts of sale of contiguous parcels of property, executed three deeds to three assignees who were, in effect, the same as the assignor, and the properties were all used to generate rental income. This court overlooked the instruments used and found a single transaction for consideration in excess of $1,000,000 subject to real property transfer gains tax. The salient facts which distinguish this case from Bombart are that, here, petitioner did not acquire the three parcels through a single deed, nor was there one management office which conducted the rental operations of the three parcels. Nonetheless, aggregation is mandated here in view of the intention of the parties to treat a breach of any contract of sale as a breach of all three contracts and petitioner's admission at the hearing that the sale was structured with three different contracts and closing dates for the very purpose of preventing the transaction from having the appearance of a single sale.

Nor are we persuaded by petitioner's contention that the use of the words "contiguous" and "adjacent" in 20 NYCRR 590.42 is contrary to the legislative intent underlying Tax Law § 1440 (7) and that, in any event, such regulation took

effect subsequent to the signing of the contracts of sale.[2] The regulation does no more than codify the policy of the Department of Taxation and Finance that contiguity should be one factor that is considered in determining whether to aggregate consideration from various sales. Contiguity does not, of itself, justify treating the separate transfers as one; the properties must have also been used for a common or related purpose. Since the regulation did not form the basis of respondent's decision, it cannot be said to have been applied retroactively.

Finally, although a statute which levies a tax is to be construed most strongly against the government, once it is determined that a transaction is subject to such a tax, a party claiming exemption therefrom must clearly demonstrate its entitlement thereto (*Matter of Grace v New York State Tax Commn.*, 37 NY2d 193; *Matter of Old Nut Co. v New York State Tax Commn.*, 126 AD2d 869, 871, *lv denied* 69 NY2d 609). Petitioner herein has failed to meet this burden. Accordingly, respondent's determination is rational and supported by substantial evidence.

Determination confirmed, and petition dismissed, without costs. Kane, J. P., Mikoll, Yesawich, Jr., Harvey and Mercure, JJ., concur.

2. Petitioner executed the contracts for sale of the parcels on September 10, 1985. The effective date of 20 NYCRR 590.42 was September 24, 1985.