■ In the Matter of JOSEPH M. MATTONE, Petitioner, v STATE OF NEW YORK DEPARTMENT OF TAXATION AND FINANCE et al., Respondents.—Yesawich, Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent State Tax Commission which sustained a real property transfer gains tax assessment imposed under Tax Law article 31-B.

The facts are not in dispute. In 1981, petitioner purchased three contiguous parcels, each with a brownstone townhouse, at 9, 11 and 13 East 63rd Street in New York City. He intended to demolish the buildings and replace them with an 11-story apartment building, but was thwarted when the City Landmark Preservation Commission designated building 9 as having some historical architectural significance. Petitioner sold building 9 in January 1983, prior to the effective date of Tax Law article 31-B (hereinafter the real property transfer gains tax), and endeavored to proceed with plans to develop the remaining property. However, after unsuccessful efforts to convince tenants to vacate and to obtain the necessary permission to commence demolition, petitioner, using separate agreements, contracted to sell buildings 11 and 13 to Rudi Neumayr for $2.5 million, after brokerage fees; the anticipated date of the transfer was March 4, 1985.

In his transferor questionnaire, petitioner estimated the real property transfer gains tax on the transaction to be

$8,201.40, which differed from respondent State Department of Taxation and Finance's subsequent assessment of $68,940.89 due to the latter's disallowance of, *inter alia,* $465,439.80 in interest and $141,855.07 in real estate taxes included by petitioner as part of the original purchase price of the property. Petitioner paid the Department's assessment and then sought a refund, contending that these expenses were properly capitalized and that in disallowing them in this instance the Department acted improvidently. Ultimately, respondent State Tax Commission, following a hearing, denied petitioner's claim. Petitioner then initiated this proceeding to review that determination. As noted by the Tax Commission in its decision, the issue presented is whether the foregoing "amounts are properly allowable as capital improvement costs forming a part of petitioner's original purchase price for purposes of calculating gains on the sale of the premises".

The real property transfer gains tax, which imposes a 10% tax on the difference by which the sale price of real property selling for more than $1 million exceeds the "original purchase price" (Tax Law §§ 1442, 1440 [3]; *see,* Tax Law § 1441), encompasses within the original purchase price the cost of capital improvements, including costs customarily, reasonably and necessarily incurred for the construction of such improvements (Tax Law § 1440 [5] [a]). At the time of petitioner's transfer no applicable regulation had been promulgated but the rules by which petitioner's tax has been calculated were set out in the Department's Publication 588, which has since been incorporated, in relevant part, into regulations *(see,* 20 NYCRR 590.15 [b], [c]; 590.16 [d], [e]). Under these rules, interest charges and real estate taxes incurred in connection with the construction of capital improvements are included in the transferor's original purchase price while interest charges on funds used to acquire real property and real estate taxes incurred while simply carrying property are not. Petitioner claims that such an approach is irrational and not in keeping with the legislative intent of the statute. He maintains that because of the difficulty he encountered attempting to develop the property, it was essentially nonproductive and, by analogy to Federal income tax regulations, carrying charges on nonproductive real property should be incorporated into the property's basis at the taxpayer's election.

Aside from the dubious nature of petitioner's analogy—he submitted no evidence that for Federal income tax purposes he did indeed capitalize the subject expenses rather than deduct them from his income as operating expenses—we are

constrained to defer to the Tax Commission's interpretation of a statute to the extent it involves matters within its expertise *(Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459), particularly where, as here, the statute expressly vests explicative power in the Tax Commission *(see,* Tax Law § 1440 [5] [a]; *see also, Matter of New York Pub. Interest Research Group v New York State Dept. of Ins.,* 66 NY2d 444, 448). Furthermore, we find nothing irrational or unreasonable *(see, Kurcsics v Merchants Mut. Ins. Co., supra)* in the Tax Commission's interpretation of Tax Law § 1440 (5) (a) that carrying costs incurred prior to the commencement of construction of capital improvements are not "consideration paid or required to be paid by the transferor; (i) to acquire the interest in real property, and (ii) for any capital improvements made or required to be made to such real property", and thus are statutorily precluded from inclusion as part of the original purchase price.

Finally, petitioner urges for the first time in his brief that the Tax Commission's determination that the sales of buildings 11 and 13 should be aggregated pursuant to Tax Law § 1440 (7) is not supported by substantial evidence. This issue is not preserved for judicial review *(see, Matter of Koren-Di Resta Constr. Co. v State Tax Commn.,* 138 AD2d 909, 911). Were we to consider the merits of this argument, we would conclude there is substantial evidence to support the Tax Commission's determination, not the least of which being petitioner's transferor questionnaire wherein he consolidated the sales of the two buildings and listed Neumayr as the transferee.

Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Kane, Casey, Yesawich, Jr., and Mercure, JJ., concur.