In the Matter of BREDERO VAST GOED, N. V., et al., Appellants, v TAX COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, April 6, 1989

APPEARANCES OF COUNSEL

*Morgan, Lewis & Bockius (John Linsenmeyer* of counsel), for appellants.

*Robert Abrams, Attorney-General (Francis V. Dow* and *Peter H. Schiff* of counsel), for respondent.

**OPINION OF THE COURT**

Weiss, J. P.

The facts which have been stipulated by the parties include

the following. Petitioners are three public Netherlands corporations that jointly own Brefries Realty Madison Avenue Corporation (hereinafter Brefries Realty), a New York corporation. On January 23, 1980, Brefries Realty entered into an agreement to purchase a building at 342 Madison Avenue in New York City. In March 1980, Brefries Realty assigned its rights under the contract to Brefries Madison Associates, a New York limited partnership. Shortly thereafter, Brefries Madison Associates acquired title to the building at 342 Madison Avenue. In December 1980, Brefries Realty became an 85% general partner in Brefries Madison Associates. The remaining 15% was controlled by Bruce Berger. During 1982, the partnership unsuccessfully attempted to sell the parcel at the appraised value of $85,000,000. Notably, the partnership agreement included a buy-sell provision permitting either partner to offer to buy or sell the other's entire interest.

In March 1983, Berger and petitioners orally agreed that a designee of Berger, RPBLC Properties Corporation (hereinafter RPBLC), would acquire the Brefries Realty stock for $72,250,000, a sum commensurate with 85% of the appraised property value. By March 17, 1983, petitioners' respective boards of directors approved the proposed sale by written resolution. By March 25, 1983, Berger and petitioners considered themselves legally bound to consummate the sale. Berger had activated RPBLC and arranged for funding of a down payment. In the meantime, counsel advised the parties that legislation was pending to implement a 10% gains tax on the sale of real estate in excess of $1,000,000. To ensure an exemption for the instant transaction, a written stock sale agreement was prepared during the week of March 21, 1983. The written contract was ready for execution by March 25, 1983, but neither Berger nor petitioners' representative was available. The stock sale agreement was finally executed by counsel for both parties on March 29, 1983, one day after the effective date of Tax Law article 31-B (see, L 1983, ch 15, § 181, eff Mar. 28, 1983). A down payment of $250,000 accompanied the execution of the contract. In June 1984, petitioners paid the resulting gains tax of $3,907,426.80 under protest and the sale to RPBLC was completed. A petition for a refund was filed with respondent, which, on the facts stipulated, sustained the refund denial. Petitioners commenced this proceeding seeking to annul respondent's determination and to obtain a refund. Supreme Court upheld the decision (138 Misc 2d 27) and this appeal ensued.

The threshold question before us is whether the instant transaction qualified as a "transfer of real property" within the scope of Tax Law article 31-B. A brief review of the pertinent statutory provisions is required. A 10% gains tax attends a transfer of real property in this State for values in excess of $1,000,000, payable by the transferor (Tax Law §§ 1441, 1443 [1]). A "transfer of real property" is broadly defined as "the transfer or transfers of any interest in real property by any method, including but not limited to * * * *acquisition of a controlling interest in any entity with an interest in real property*" (Tax Law § 1440 [7] [emphasis supplied]). A "controlling interest" means a 50% or more beneficial interest in an entity (Tax Law § 1440 [2]). The term "interest" in real property encompasses various indicia of ownership, including the right to receive rents or other income generated by the parcel (Tax Law § 1440 [4]). There is little question that the statute would apply to the transfer of an entity that actually owns the real estate. Here, however, RPBLC acquired stock from Brefries Realty, which had an 85% interest in the partnership, which in turn, held title to the property. Focusing on the phrase underscored above, petitioners' essential premise is that the two-tiered transaction was one step removed from a "transfer of real property" because Brefries Realty did not enjoy direct ownership of the property.

■■ We reach a contrary conclusion. In assessing whether a transaction is subject to taxation, the statute which levies a tax is construed in favor of the taxpayer *(see, Matter of Sanjaylyn Co. v State Tax Commn.,* 141 AD2d 916, 919, *appeal dismissed* 72 NY2d 950). Nonetheless, we find that respondent rationally determined that the subject transaction was taxable pursuant to Tax Law article 31-B. Petitioners' thesis hinges on a literal interpretation of the "transfer of real property" definition (Tax Law § 1440 [7]). This court has previously recognized, however, that the statute employs an expansive definition designed to maximize revenues *(see, Matter of Iveli v Tax Appeals Tribunal,* 145 AD2d 691, *lv denied* 73 NY2d 708; *Matter of Bombart v Tax Commn.,* 132 AD2d 745, 747). The language utilized supports this construction. As noted above, the statute includes transfers of *"any interest* in real property by *any method, including but not limited to"* certain described formats (Tax Law § 1440 [7] [emphasis supplied]). The definition is comprehensive, but not all inclusive, and evinces a legislative deferral to respondent's

construction of the transfer concept. Here, respondent looked beyond the two-tiered nature of the conveyance and determined that petitioners "effectively" transferred an interest in the 342 Madison Avenue building. This construction keys into the economic reality that the partnership's sole asset consisted of the Madison Avenue property, and that the new 85% general partner, RPBLC, acquired a controlling interest in the real estate *(see, 595 Investors Ltd. Partnership v Biderman,* 140 Misc 2d 441, 445-446). In our view, respondent's interpretation is entirely rational and we defer to that construction *(see, Matter of Mattone v State of N. Y. Dept. of Taxation & Fin.,* 144 AD2d 150, 152).[1] Nor are we persuaded by petitioners' additional suggestion that the enactment of Internal Revenue Code § 897 (26 USC § 897), as part of the Foreign Investment in Real Property Tax Act of 1980, precludes the application of Tax Law article 31-B to the instant conveyance. That act, which prevented the imposition of a tax on gains from foreign investments such as petitioners' until 1985, did not preempt this State's taxing authority *(see, e.g., Container Corp. v Franchise Tax Bd.,* 463 US 159, 195-197).

▮ Petitioner further maintains that the transfer to RPBLC was tax exempt pursuant to Tax Law § 1443 (6). Statutory exemptions are strictly construed against the taxpayer, who must demonstrate that the only reasonable interpretation of the provision proves his entitlement to the exemption *(see, Matter of Auerbach v State Tax Commn.,* 142 AD2d 390; *Matter of Yanowicz & Charney v Department of Taxation & Fin.,* 140 AD2d 866, 868; *Matter of Estate of Dworetz v State Tax Commn.,* 128 AD2d 946, 947-948, *lv denied* 69 NY2d 612). Our inquiry is whether petitioners entered into a "written contract" with RPBLC on or before March 28, 1983 within the meaning of Tax Law § 1443 (6). This argument does not focus on the actual stock sale agreement, which concededly was not executed until March 29, 1983. Instead, petitioners reason that since they were legally obligated to sell the Brefries Realty stock prior to March 28, 1983, the statutory exemption applies. Petitioners' thesis is that the buy-sell terms of the partnership agreement, the written board resolutions autho-

1. We recognize that Supreme Court upheld respondent's determination on the strength of 20 NYCRR 590.51, a regulation promulgated after the fact, which indicates that multitiered transactions can be taxable. Respondent, however, did not refer to this regulation and treated the conveyance as taxable on the basis of Tax Law § 1440 (7), a result with which we concur *(see, Matter of Iveli v Tax Appeals Tribunal,* 145 AD2d 691).

rizing the sale, the unsigned stock sale agreement setting forth the terms of sale, and the course of conduct between the parties, taken together, evidence either an enforceable option agreement or a mutually binding oral agreement that satisfied the "written contract" requirements of Tax Law § 1443 (6). We hold otherwise.

Initially, we observe that respondent has been accorded considerable discretion in assessing whether the "written contract" exemption provision has been satisfied (see, Matter of Old Nut Co. v New York State Tax Commn., 126 AD2d 869, 871, lv denied 69 NY2d 609). Here, respondent determined that the partnership buy-sell provision essentially created a right of first refusal which did not satisfy the statutory exemption (see, Matter of Dworetz v State Tax Commn., 128 AD2d 946, supra; 20 NYCRR 590.30). Petitioners concede as much, but maintain that, upon passage of the written board resolutions by March 17, 1983, this right of first refusal ripened into an enforceable option agreement. Respondent recognizes that a written option granted prior to March 29, 1983 may form the basis of a Tax Law § 1443 (6) exemption (see, Tax Law § 1440 [7]; 20 NYCRR 590.23). The question raised is whether any such option materialized. Although petitioners claim otherwise, respondent's decision indicates that the net legal effect of these documents was considered. Notably, the written board resolutions authorizing the sale of Brefries Realty stock for $72,250,000 were not unqualified, but conditioned on the approval of the remaining terms of sale by Martin Hoek, petitioners' authorized representative. This contingency speaks against a binding option agreement. Nor does the record show that the payment and written notice provisions of the buy-sell agreement were implemented, a fact which indicates that the ultimate conveyance was not simply a direct exercise of a pretax option agreement, but the result of negotiations independent of any option rights. Although respondent acknowledges that the parties orally agreed to the terms of sale, as set forth in the stock sale agreement, by March 25, 1983, we find that respondent could rationally determine that the transaction was not exempt under Tax Law § 1443 (6).

■ Finally, we are not persuaded that the assessment of a gains tax against petitioners constitutes retroactive taxation

in violation of due process.[2] As indicated, the parties have agreed that petitioners were contractually obligated to sell the Brefries Realty stock by March 25, 1983, three days prior to the effective date of Tax Law article 31-B (see, L 1983, ch 15, §§ 181, 184 [n]). Nonetheless, the retroactive extension of a taxing statute does not, per se, violate the due process clause of the 5th Amendment (see, United States v Hemme, 476 US 558, 568-569; United States v Darusmont, 449 US 292). In Matter of Replan Dev. v Department of Hous. Preservation & Dev. (70 NY2d 451, appeal dismissed — US —, 108 S Ct 1207), the Court of Appeals recently enunciated the principles attendant a retroactive tax provision (supra, 70 NY2d, at 455-456; see also, Wittenberg v City of New York, 135 AD2d 132, 137-139, affd 73 NY2d 753). Application of these guidelines does not substantiate petitioners' thesis. Tax Law article 31-B imposes a gains tax on the transfer of real property and thus may favorably be distinguished from the imposition of other kinds of taxes (Matter of Replan Dev. v Department of Hous. Preservation & Dev., supra, at 455-456). Significantly, petitioners were cognizant of the pending gains tax legislation as early as March 21, 1983, were advised to execute a written agreement to insure an exemption, and then orally committed themselves to the transaction several days later. Given this scenario, it is difficult to perceive any justifiable reliance on a pregains tax status (supra, at 456).

Nor can we overlook the fact that petitioners actually executed a written stock sale agreement one day after the gains tax went into effect. This is not an instance of an excessive retroactive period, and the legislation constitutes a legitimate revenue generating measure (supra, at 456-457; see, Trump v Chu, 65 NY2d 20, 23, appeal dismissed 474 US 915). Even were we to accept petitioners' characterization of Tax Law article 31-B as a "wholly new type of tax", a contention respondent sharply disputes (see, 3 Comeau, Helm and Murphy, New York Tax Service, Real Property Gains Tax § 80.22), under the analysis delineated in Matter of Replan Dev., we find that respondent's imposition of the gains tax did not constitute an unconstitutional deprivation of due process. In practical terms, petitioners simply cannot be likened to the individual who, as described by Judge Learned Hand, "has no

---

2. In Trump v Chu (65 NY2d 20, appeal dismissed 474 US 915), the Court of Appeals rejected an equal protection challenge to the constitutionality of Tax Law article 31-B.

reason to suppose that any transactions of the sort will be taxed at all" *(Cohan v Commissioner of Internal Revenue,* 39 F2d 540, 545).

MIKOLL, YESAWICH, JR., LEVINE and HARVEY, JJ., concur.

Judgment affirmed, without costs.