■ JAMES P. FLAHERTY et al., Respondents, v ELBER CONSTRUCTION CORP., et al., Appellants.—In an action to recover a down payment made pursuant to a contract for the sale of real property, the defendant sellers and their attorneys appeal from (1) a judgment of the Supreme Court, Rockland County (Miller, J.), dated January 11, 1988, which, upon an order denying the defendants' motion for summary judgment dismissing the complaint, searching the record, and granting the plaintiffs summary judgment, is in favor of the plaintiffs and against them in the principal sum of $18,500, and (2) an order of the same court, dated February 23, 1988, which denied their motion for reargument.

Ordered that the appeal from the order dated February 23, 1988, is dismissed since no appeal lies from an order denying reargument (see, DeFreitas v Board of Educ., 129 AD2d 672; Galaxy Export v Bedford Textile Prods., 89 AD2d 576); and it is further,

Ordered that the judgment is affirmed; and it is further,

Ordered that the plaintiffs are awarded one bill of costs.

On March 25, 1985, the plaintiffs entered into a development contract for the purchase of a house "standing as is" for the total price of $185,000, owned by the defendants Elber

Construction Corporation and Can-Am Development Corporation. The purchasers paid the initial down payment of $18,500 to the defendant law firm Krashes, Ross, Gess & Brown, attorneys for the sellers, as escrow agents. The contract provided for a further payment of $46,500 on the delivery of the deed and the payment of the balance of $120,000 was to be paid as follows:

"by the purchaser executing his bond and purchase money mortgage or extension and assumption agreement in said amount to a lending institution (the proceeds of which are to be immediately turned over to the seller) which mortgage (and the bond) or extension agreement shall be on the form or forms used by the lending institution and shall bear interest at the rate of *[sic]* prevailing per annum, and which mortgage is to run for a term of 25-30 years, and is to be paid in monthly installments of interest and principle *[sic]* including tax and fire insurance deposits in accordance with the usual terms of said bonds and mortgages or extension agreements. The disbursements incurred in placing and closing said mortgage shall be borne by the purchaser.

"The purchaser agrees to forthwith file with a lending institution of seller's selection a statement of his credit and/or financial ability upon the form or forms required by the lending institution. It is understood and agreed by and between the parties hereto that should for any reason, after due diligence, honesty and cooperation of the purchaser, the lending institution reject the purchaser's application because of his credit and/or financial responsibility, or otherwise, then this Contract shall become null and void upon notice to purchaser thereof and the seller will return to the purchasers the monies paid in connection with this Contract".

While the purchasers received a mortgage commitment dated May 10, 1985 for the required amount, it was subject to the following pertinent conditions: (1) the sale of the purchasers' own home, (2) "[i]n the event the above mortgage loan [did] not close by June 14, 1985, time being of the essence, this Mortgage Commitment shall be null and void", and (3) a letter from the employer of Mr. Flaherty that his commissions were "regular & recurring income". However, the purchasers properly rejected the commitment because they could not meet the conditions contained therein.

Therefore, by letter dated June 21, 1985, the sellers sought to schedule a closing for July 1, 1985. By letter dated June 28, 1985, the purchasers advised the sellers that in the absence of

their having a firm unconditional mortgage commitment they were declaring the contract "null and void" and they requested a refund of their down payment. The sellers subsequently attempted to reschedule the closing for July 30, 1985 making time of the essence. The purchasers failed to attend that closing and the defendant law firm released the down payment to the sellers.

As the Supreme Court noted, the sale of the purchasers' home was a condition contemplated by the parties and the fact that the mortgage commitment was so conditioned did not render it null and void. However, we agree with the Supreme Court's finding that under the circumstances, the plaintiffs' failure to attend the closing was lawfully excused and they were entitled to the return of their down payment. This contract did not contain the usual mortgage commitment language, and to the extent that the language is ambiguous and susceptible to two interpretations, the one less favorable to the party who supplied the language, here the sellers, is preferred *(see, Rentways, Inc. v O'Neill Milk & Cream Co.,* 308 NY 342). Therefore, we find that under terms of the contract the purchasers needed a mortgage commitment in hand at the closing. Under the terms of the mortgage commitment issued, it became null and void on June 14th, regardless of whether or not the purchasers had rejected it. Therefore, on June 28th, the plaintiffs had an absolute legal right to terminate the contract, which they did *(see, Zigman v McMackin,* 6 AD2d 907, *rearg denied* 6 AD2d 1044). Since the commitment itself made time of the essence the plaintiffs cannot be faulted for not attempting to extend its life. The rights of the parties stabilized when the purchasers exercised their right to terminate on June 28th, and nothing that the sellers did thereafter, particularly their attempts to create a forfeiture if the purchasers failed to close on July 30th, could have any effect upon the matter *(see, Salvati v Permanent Home Bldrs.,* 30 AD2d 967).

Accordingly, the purchasers were entitled to judgment against the sellers and their attorneys for the amount of the down payment. Lawrence, J. P., Sullivan, Harwood and Balletta, JJ., concur.