In the Matter of CHELTONCORT COMPANY, Petitioner, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. (Proceeding No. 1.)

In the Matter of PERRY THOMPSON THIRD COMPANY, Petitioner, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. (Proceeding No. 2.)

Third Department, December 31, 1992

APPEARANCES OF COUNSEL

*Joseph Gaier, P. C.,* New York City *(Mark L. Koren* of counsel), for petitioners.

*Robert Abrams, Attorney-General,* Albany *(Patrick Barnett-Mulligan* and *Nancy A. Spiegel* of counsel), for Commissioner of Taxation and Finance of the State of New York, respondent.

## OPINION OF THE COURT

HARVEY, J.

Both petitioner in proceeding No. 1, Cheltoncort Company (hereinafter Cheltoncort), and petitioner in proceeding No. 2, Perry Thompson Third Company (hereinafter Perry), are partnerships which in 1985 offered for sale buildings they owned as part of a conversion of the buildings to cooperative ownership *(see,* General Business Law § 352-e). Both buildings contained numerous apartments and commercial stores. On June 18, 1987, title to the building in proceeding No. 1 was transferred from Cheltoncort to Cheltoncort Owners Corporation (hereinafter Cheltoncort Coop) for $3,086,671 in cash and a $1,800,000 purchase-money mortgage. Part of the offering plan indicated that Cheltoncort Coop would lease the commercial

space to Cheltoncort for 49 years at a rent of $55,000 per year for the first two years, and thereafter for a rental fee based on certain operating costs. At closing, Cheltoncort executed a deed to Cheltoncort Coop and received a lease for commercial space in return. Similarly, in proceeding No. 2, Perry transferred its building on June 25, 1987 to 110 Thompson Street Owners Corporation (thereinafter Perry Coop) for $1,243,434.70 in cash and a $900,000 purchase-mcney mortgage. The offering plan granted Perry a 99-year lease for the commercial space at a rent of $10,000 per year for the first two years and a rent based on certain operating costs for subsequent years. These parties also exchanged a deed and a lease at the closing.

Thereafter, both Cheltoncort and Perry each paid a real property transfer tax to New York City and respondent Commissioner of Taxation and Finance (hereinafter respondent) based on the cash and purchase-money mortgages both received as consideration for their buildings. Nevertheless, the Audit Division of the New York State Department of Taxation and Finance (hereinafter the Division) determined for real property transfer gains tax purposes that Cheltoncort also received as consideration for the building an economic gain of $387,300.38 from the lease agreement and that Perry received an economic gain of $123,010.64 from its lease agreement. The Division arrived at these figures by taking the difference between the rent required to be paid by both Cheltoncort and Perry to their respective cooperative owners and the rent received from the subtenants of the various stores as they were in existence at the time the gains tax assessments were submitted for review, projected those rents for the full term of the two leases and reduced those sums to their present value. As a result of these calculations, the Division determined that both Cheltoncort and Perry owed additional sums in real property transfer gains taxes.

Subsequently, both Cheltoncort and Perry each paid a portion of the assessed amounts and filed petitions for revision of determination or refund. Both separately argued that their leases were not consideration for the transfer of the buildings. Respondent answered both petitions and, subsequently, separate hearings were held before an Administrative Law Judge (hereinafter ALJ) who determined in both cases that, pursuant to Tax Law § 1440 (1) (a), the value of the leases was part of the consideration for transfer of the buildings. Cheltoncort and Perry filed notices of exception to this decision with

respondent Tax Appeals Tribunal (hereinafter the Tribunal), In both cases, the Tribunal denied petitioners' exceptions and upheld the determinations of the ALJ in their entirety. Petitioners then commenced these CPLR article 78 proceedings to challenge the Tribunal's determinations.

■ We confirm. In our view, the Tribunal correctly determined that petitioners' economic gain from the leases was consideration for the building transfers and, therefore, a real property transfer gains tax was appropriately assessed.* Tax Law § 1441 imposes a tax on "gains derived from the transfer of real property within the state". An exemption from this tax is provided, however, "[i]f a transfer of real property, however effected, consists of a mere change of identity or form of ownership or organization, where there is no change in beneficial interest" (Tax Law § 1443 [5]).

Here, while petitioners both claim that the exemption contained in Tax Law § 1443 (5) applies, the evidence indicates that a transfer of real property, not just a mere change in ownership, occurred in these cases. Certain of petitioners' New York City transfer tax returns in the record state that 100% of Cheltoncort and Perry's interest in the buildings was transferred to Cheltoncort Coop and Perry Coop. Further, the offering plans indicate that petitioners "intend[ed] to sublease the stores and make a profit on the rental". In addition, as found by the ALJ, the leases were "under concededly advantageous terms". Because petitioners bear the burden of demonstrating entitlement to the exemption contained in Tax Law § 1443 (5) *(see, Matter of Grace v New York State Tax Commn.,* 37 NY2d 193, 196), we conclude that the Tribunal's determination that the economic gain from the leases was consideration for the building transfer and therefore subject to the real property transfer gains tax was rational *(see, Matter of Mattone v State of New York Dept. of Taxation & Fin.,* 144 AD2d 150, 152).

■ Petitioners' remaining arguments have been considered, including their assertion that they are being unfairly treated because they chose to convert to a cooperative form as opposed to a condominium form, and have been rejected. While the Tribunal does point out that a sponsor of a condominium conversion who decided to retain a unit would not be sub-

---

* Consideration "includes any price paid or required to be paid, whether * * * required to be paid by money, property, or any other thing of value" (Tax Law § 1440 [1] [a]).

jected to tax, here petitioners "did not retain the commercial space. Petitioner[s] transferred the entire building to the cooperative housing corporation. Therefore, the transfer of the building is subject to tax as part of the overall cooperative conversion plan" *(see, Mayblum v Chu,* 67 NY2d 1008). We are similarly unpersuaded by petitioners' claim that the method used by the Division to determine their tax was flawed because it did not consider the expenses of operation or the prospect of vacancy. As the Tribunal noted, "the value of the consideration has to be determined at the time of the transfer in order to finally fix the tax owed. Subsequent events do not alter the value that the consideration had at the time of the transfer" *(see,* 20 NYCRR 590.26).

MIKOLL, J. P., YESAWICH JR., LEVINE and MAHONEY, JJ., concur.

Adjudged that the determinations are confirmed, without costs, and petitions dismissed.