In the Matter of FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of GOLDOME, Successor to GOLDOME CAPITAL INVESTMENTS, INC., Petitioner, v COMMISSIONER OF TAXATION & FINANCE et al., Respondents.

Third Department, March 4, 1993

## APPEARANCES OF COUNSEL

*Saperston & Day, P. C.,* Buffalo *(Charles C. Swanekamp* of counsel), for petitioner.

*Robert Abrams, Attorney-General,* Albany *(Julie S. Mereson* and *Peter G. Crary* of counsel), for Commissioner of Taxation and Finance, respondent.

## OPINION OF THE COURT

WEISS, P. J.

United National Corporation (hereinafter UNC) was a publicly held corporation formed in Delaware and headquartered in New York City. It was in the main a real estate holding corporation which at the relevant times owned substantial real property in over 20 locations in 17 cities in 11 States. In September 1982, the trustees of Buffalo Savings Bank met and were told that UNC "has stated assets of approximately $65 million and substantial unrealized appreciation on its prop-

erty holdings. In light of our current tax position, this last factor is one of the primary reasons why this acquisition would be very desirable for us." The trustees then passed a resolution authorizing the officers to take any and all actions necessary for the acquisition of UNC's business by the bank.

This imprimatur having been given, Buffalo Savings Bank, whose name had been changed to Goldome Bank for Savings (hereinafter GBS), and UNC executed an instrument entitled "Agreement and Plan of Merger" on January 21, 1983, amended on February 18, 1983, which essentially proposed that the parties desired to effect the acquisition of UNC by GBS through a merger of the two corporations, subject, however, to certain terms, conditions and provisions. Article III of the agreement, entitled "Warranties and Representations of UNC", states: "3.2 Authority. Subject to the approval of its shareholders." Article VI, entitled "Shareholder Approval, Registration of new Preferred Shares, and Listing Thereof", provides: "6.1 * * * (a) The parties hereto acknowledge and understand that as a condition precedent to the Merger and under the General Corporation Law of the State of Delaware, the approval of shareholders of UNC must be obtained and UNC shall, as expeditiously as possible, call a meeting of its shareholders for such purpose and solicit proxies to vote in favor of such Merger." Article VIII, entitled "Conditions to the Closing and Merger", states:

"8.1 Conditions Precedent to Obligations of Both Parties. The satisfaction of each of the following, on or before and as of the Effective Time, shall be conditions precedent to the obligation of each of the parties hereto to consummate the Merger:

"(a) the requisite consent or approval of the shareholders of UNC shall have been obtained."

Finally, because UNC was formed and exists pursuant to Delaware law, the relevant statute of that State requires that any agreement to merge "shall be submitted to the stockholders of each constituent corporation at an annual or special meeting for the purpose of acting on the agreement" (Del Code Annot, tit 8, § 251 [c]). From the foregoing, it is indisputable that notwithstanding all of the acts and procedures contemplated and those actually performed subsequent to the signing of the instrument on January 21, 1983, the agreement to merge could not and did not become effective or enforceable until it was approved by a majority of UNC's shareholders.

Petitioner argues that it is exempt from the real property transfer gains tax of Tax Law § 1441 (L 1983, ch 15, § 184). It contends entitlement to the exemption from the gains tax pursuant to Tax Law § 1443 (6) because the transfer of real property which was completed after March 28, 1983, the effective date of the statute, was pursuant to a written contract entered into on or before that effective date.

Because the stipulated facts show that an instrument was executed on January 21, 1983 bearing the title "Agreement and Plan of Merger" and was amended on February 18, 1983, the issue in this proceeding distills to whether the determination of respondent Tax Appeals Tribunal that because the merger was expressly made subject to approval by shareholder vote, that agreement which effected the transfer of real property was not binding until such approval was obtained on May 13, 1983, was erroneous, arbitrary, capricious or unreasonable.

Petitioner has focused its argument upon a strictly literal reading of Tax Law § 1443 (6) and contends that the transfer was exempt because (1) it was made pursuant to a written contract, (2) the contract was entered into before March 28, 1983, and (3) the date of execution of such contract was confirmed by independent evidence. Relying wholly on its facial reading of this section of the Tax Law, petitioner implores this Court to find that the Tax Appeals Tribunal acted arbitrarily and without reason by reading into the statute a requirement that the contract had to be binding in order to be in compliance with the statute. To demonstrate that the parties intended to be bound by the contract, petitioner points to several necessary steps taken by them in furtherance of the contract and the fact that the boards of directors of both corporations gave approval to it.

■ While petitioner has acknowledged that formal approval of the contract by UNC's shareholders was a requisite under Delaware law (see, Del Code Annot, tit 8, § 251 [c]), it continues to insist that the absence of this approval did not negate the fact that there was a contract timely executed which the parties considered to be binding. We are unpersuaded by this argument. That the entire proposed merger was wholly and inexorably dependent upon UNC's shareholder approval is beyond cavil. Absent that approval, nothing could or would happen. In simplest terms, a symmetry exists: absent shareholder approval there would be no contract for merger, and without a contract there could be no exemption from the gains tax.

The dissent has characterized UNC shareholder approval as a condition precedent and draws an esoteric distinction between two types of conditions precedent: the first, a condition precedent to the existence or formation of a contract, and the second, a condition precedent to performance under an extant contract; the latter condition precedent is described as an event which must occur before performance under a contract becomes due (citing *Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106, 112). We do not find the hypothesis in either *Merritt Hill Vineyards v Windy Hgts. Vineyard (supra)* or Restatement (Second) of Contracts § 224 to be dispositive of the instant case. We do not believe that there is a bright-line rule distinguishing the contingency of shareholder approval into two separate and distinct categories, the first affecting the very existence of the agreement itself and the second affecting only the obligation to perform according to the terms of the agreement. Within the context of this case, that distinction is illusory and chimerical.

The issue posited is no stranger to this Court. In *Matter of Lever v New York State Tax Commn.* (144 AD2d 751), we held that a March 24, 1983 "letter agreement" accompanied by a $50,000 good-faith deposit, to be followed by execution of a contract prior to April 1, 1983, lacked the finality of assent necessary for a binding agreement. We upheld the administrative determination denying exemption from the gains tax. In *Matter of Bredero Vast Goed N.V. v Tax Commn.* (146 AD2d 155, *appeal dismissed* 74 NY2d 791), we upheld a determination which denied the Tax Law § 1443 (6) exemption from the gains tax on the ground that the written stock sale agreement prepared before March 25, 1983 to ensure the exemption had not been finally executed until March 29, 1983, one day after the effective date of Tax Law article 31-B.

Understandably, statutory exemptions are strictly construed against the taxpayer *(see, Matter of Grace v New York State Tax Commn.,* 37 NY2d 193, 196; *Matter of Golub Serv. Sta. v Tax Appeals Tribunal,* 181 AD2d 216, 219) and considerable discretion has been accorded respondents in determining whether the "written contract" exemption requirement of Tax Law § 1443 (6) has been satisfied *(see, Matter of Bredero Vast Goed N.V. v Tax Commn., supra,* at 160; *see also, Matter of Old Nut Co. v New York State Tax Commn.,* 126 AD2d 869, 871, *lv denied* 69 NY2d 609).

We cannot agree that the instant determination holding

that the merger agreement lacked finality of assent necessary for a binding contract, thus qualifying petitioner for the exemption *(see, Matter of Lever v New York State Tax Commn., supra,* at 752), was irrational *(see, Matter of Yanowicz & Charney v Department of Taxation & Fin.,* 140 AD2d 866; *Matter of Dworetz v State Tax Commn.,* 128 AD2d 946, *lv denied* 69 NY2d 612).

█ Nor do we find merit in petitioner's contention that it should not have been found liable for payment of the real property transfer gains tax. Petitioner, as transferee, is personally liable for the amount of the tentative assessment compiled from the questionnaires which should have been filed prior to the closing *(see,* Tax Law § 1447). Here, because the questionnaires were filed late, the tentative assessment made when the questionnaires were received was also late. When the real property transfer gains tax remains unpaid, Tax Law § 1447 (3) (a) holds a transferee liable for the tentative assessment. The fact that Tax Law § 1447 (3) (a) was subsequently amended to permit the determination of the tax due and to hold the transferee personally liable where no questionnaire is ever filed or false information is supplied (L 1984, ch 900, § 17) does not change petitioner's liability for the tentative assessment based upon the questionnaires.

█ Petitioner's attack on the constitutionality of the statute is equally unpersuasive. Tax Law article 31-B and Tax Law § 1443 (6) cannot be in conflict with US Constitution, article I, § 10 (the Contracts Clause) inasmuch as we have held that the merger agreement did not become a binding contract until well after the effective date of Tax Law article 31-B.

CASEY, J. (dissenting). The majority holds that no contract existed until the required shareholder approval was obtained. Judicial review of an administrative determination, however, is limited to the grounds invoked by the agency *(Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.,* 77 NY2d 753, 758), and the determination of respondent Tax Appeals Tribunal expressly recognized that "[t]he merger agreement may have been a contract". In any event, there is no support in the record for the majority's conclusion that shareholder approval of the merger was the *sine qua non* of the existence of a contract between petitioner and United National Corporation (hereinafter UNC). According to this analysis, both parties would have been free unilaterally to abandon the proposed merger at any time prior to shareholder

approval, but the agreement expressly and unambiguously provided that it could be terminated prior to the effective date of the merger only upon the occurrence of certain events, including the parties' "mutual concurrence". The agreement also obligated the parties to perform or refrain from a variety of activities prior to, and independent of, shareholder approval. Many of these obligations related to obtaining such approval, but the obligations existed regardless of whether such approval was actually obtained.

Instead of being a prerequisite to the existence or formation of a contract, shareholder approval was included as one of five conditions which had to be satisfied as "conditions precedent to the obligation of each of the parties to consummate the Merger". The majority apparently confuses a condition precedent to performance under a contract with a condition precedent to the existence of a contract. The Court of Appeals has had no trouble recognizing the distinction *(see, Allis-Chalmers Mfg. Co. v Malan Constr. Corp.,* 30 NY2d 225, 231, n 4) and the differences between the two conditions are not difficult to understand. The former condition is " 'an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due' " *(Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106, 112, quoting Restatement [Second] of Contracts § 224). Inasmuch as the latter type of condition affects the existence of a contract *(see, Matco Elec. Co. v American Dist. Tel. Co.,* 156 AD2d 840, 842) while the other affects performance under an existing contract *(see, Merritt Hill Vineyards v Windy Hgts. Vineyard, supra,* at 112), a condition cannot be both types; it must be one or the other. The clear and unambiguous language of the parties' agreement read as a whole, which imposes a number of obligations on the parties independent of shareholder approval and expressly makes shareholder approval a condition precedent to the parties' obligation to consummate the merger, establishes as a matter of law that the parties intended shareholder approval of the merger to be a condition precedent to performance under an existing contract, not a condition precedent to the existence of the contract itself. Perplexed by the distinction between the two types of conditions, which it describes as "esoteric", the majority simply ignores the distinction and rewrites the parties' agreement to make shareholder approval a prerequisite to the existence of a contract.

It is important to note that although Delaware law required

shareholder approval of the merger agreement, there is no evidence in the record that either party lacked the authority to enter into a merger agreement which made the requisite shareholder approval a condition precedent to the performance of the parties' obligations to merge, which is what the parties did in this case. Absent shareholder approval no merger would occur, but that does not mean that no contract existed. The inclusion of a condition precedent to the parties' obligation to perform under a contract does not render a contract ineffective or unenforceable *(see, Flaherty v Elber Constr. Corp.,* 149 AD2d 655, 657). No rational basis exists for concluding that the parties did not enter into a binding contract before shareholder approval was obtained.

The cases of *Matter of Lever v New York State Tax Commn.* (144 AD2d 751) and *Matter of Bredero Vast Goed N.V. v Tax Commn.* (146 AD2d 155, *appeal dismissed* 74 NY2d 791) lend no support to the majority's holding. In the *Lever* case, the parties' "letter agreement" was nothing more than an agreement to agree because of the parties' intent to continue negotiations with a possible meeting of the minds in the future. Here, however, even a cursory reading of the parties' agreement reveals that the parties had reached the necessary meeting of the minds as to all of the material terms and conditions, including the condition requiring shareholder approval, and their intent was to be bound by those terms and conditions. In the *Bredero Vast Goed N.V.* case, the exemption was held to be inapplicable because the parties' contract was not executed before the effective date of Tax Law article 31-B. It is undisputed that the parties' agreement herein was timely executed.

The determination that the parties' agreement was not a binding contract lacks a rational basis and, therefore, should be annulled.

MERCURE and HARVEY, JJ., concur with WEISS, P. J.; CASEY and CREW III, JJ., dissent in a separate opinion by CASEY, J.

Adjudged that the determination is confirmed, without costs, and petition dismissed.