104

[597 NYS2d 485]

In the Matter of AMERICAN EXPRESS COMPANY et al., Petitioners, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents.

Third Department, May 6, 1993

**APPEARANCES OF COUNSEL**

*Stroock & Stroock & Lavan,* New York City *(Kevin L. Smith, William A. Rome* and *Jonathan A. Siegel* of counsel), for petitioners.

*Robert Abrams, Attorney-General,* Albany *(Julie S. Mereson* and *Peter G. Crary* of counsel), for Commissioner of Taxation and Finance of the State of New York, respondent.

**OPINION OF THE COURT**

MERCURE, J.

The decisive question in this case is whether the transfer of petitioners' headquarters at 125 Broad Street in Manhattan is exempt under Tax Law § 1443 (6) from the real property transfer gains tax, as petitioners contend, because the contracting parties intended to be bound by a March 18, 1983 agreement and remaining conditions were beyond the control of said parties. For reasons which follow, we reject the contention that the Broad Street property was sold pursuant to a

contract entered into and binding before March 28, 1983. Accordingly, the determination of respondent Tax Appeals Tribunal (hereinafter the Tribunal) should be confirmed.

Sometime in 1982, petitioners began negotiations with Olympia & York Battery Park Company (hereinafter O & Y), a sublessee of property at Battery Park City, to build them a new headquarters. At that time, petitioners occupied and owned a leasehold interest in the building at 125 Broad Street. O & Y and petitioners agreed that O & Y would build petitioners a 51-story office building tower on the Battery Park City property and that petitioners would sell their interest in the Broad Street property to O & Y. It was also agreed that O & Y would lease back the Broad Street property to petitioners for a limited time so that petitioners' business operations could continue to function until petitioners could move into the office building tower which was to be built. The Battery Park City transaction contemplated that petitioners would obtain a separate leasehold interest in the Battery Park City building. This required the approval of both the Battery Park City Authority (hereinafter BPCA) and the Public Authorities Control Board (hereinafter PACB). In order to sell their rights in the Broad Street property, which included rights in the ground lease as well as in the building, petitioners had to assign their chilled water agreement to O & Y. The assignment of that agreement, which gave petitioners a franchise to maintain and use two pipes and a conduit under Broad Street, required approval of the Board of Estimate of the City of New York.

The agreement of sale and the assignment of ground lease with assumption executed by petitioners and O & Y were dated March 18, 1983. On that same day, petitioners, O & Y and BPCA entered into an escrow agreement which provided, *inter alia,* that the various documents reflecting the Broad Street and Battery Park City transactions were not to be released until the Board of Estimate approved the assignment of the chilled water agreement and the PACB approved the severance lease. The Board of Estimate approved the assignment of the chilled water agreement on April 14, 1983, followed by the Mayor's approval on April 26, 1983. The PACB approved the Battery Park City transaction on April 22, 1983. The transactions did not close until June 15, 1983. On that day, the severance lease was executed between O & Y and BPCA, followed by O & Y's assignment to petitioners of a leasehold interest in the Battery Park City build-

ing. O & Y paid petitioners $160 million for the Broad Street property on June 16, 1983 by wire transfer.

After the March 18, 1983 agreements were placed in escrow and before the closing, Tax Law article 31-B was enacted, effective March 28, 1983. Thereafter, the State Department of Taxation and Finance (hereinafter the Department) determined that the new statute imposed a gains tax on the transfer of the Broad Street property. Petitioners paid a tax of $6,829,390.10 under protest, and requested a refund based upon the grandfather exemption of Tax Law § 1443 (6). The Department rejected this claim and petitioners filed an administrative petition for review.

The Administrative Law Judge (hereinafter ALJ) granted the petition, holding, *inter alia*, that at the time of execution of the March 18, 1983 agreements, the contracting parties had committed themselves to the terms of the transfers, subject only to third-party activity beyond the control of the contracting parties. Following a hearing, the Tribunal reversed the ALJ's determination, holding that the agreements, considered together, lack the finality of assent necessary to qualify for the Tax Law § 1443 (6) exemption. Petitioners then commenced this CPLR article 78 proceeding seeking review of the Tribunal's determination.

■ We reject petitioners' first contention that the Tribunal erred in posing the issue as whether a "binding contract to sell real property" was formed before March 28, 1983 rather than deciding whether a "written contract" existed at that time. Tax Law § 1441 imposes a tax on "gains derived from the transfer of real property within the state", but Tax Law § 1443 (6) provides an exemption where "a transfer of real property occurring after [March 28, 1983, the effective date of Tax Law article 31-B] is pursuant to a written contract entered into on or before [March 28, 1983], provided that the date of execution of such contract is confirmed by independent evidence" *(see,* L 1983, ch 15, §§ 181, 184). Contrary to petitioners' argument, and although the language of Tax Law § 1443 (6) states only that a "written contract" has to be entered into before March 28, 1983, this Court has determined that it is not unreasonable for the Tribunal to require evidence of a binding contract before granting the exemption *(see, Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin.,* 189 AD2d 39, 42; *Matter of Estate of Lever v New York State Tax Commn.,* 144 AD2d 751, 752; *Matter of*

*Estate of Dworetz v State Tax Commn.,* 128 AD2d 946, 948, *lv denied* 69 NY2d 612; *see also,* 20 NYCRR 590.20).

■ We also reject petitioners' assertion that they are entitled to the exemption in any event because the agreement of sale evinces a binding obligation to sell Broad Street. Although, viewed in isolation, the agreement of sale and assignment of ground lease and assumption appear to be binding instruments, the escrow agreement, properly considered by the Tribunal, casts a very different light. That instrument combines the two transactions (sale of the Broad Street property and the Battery Park City transaction) and lists conditions, applicable to both transactions, to be satisfied before the escrowed documents could be released to the parties. It is not disputed that the sale of the Broad Street property, which was petitioners' headquarters, was conditioned upon the construction of new office space by O & Y in Battery Park City. Petitioners could not be compelled to sell Broad Street to O & Y if PACB did not approve the Battery Park City transaction.

The record does not support the contention that the Board of Estimate and PACB approvals were simply conditions subsequent, the occurrence of which were beyond the control of the contracting parties and, thus, were intended to "be a condition precedent to performance under an existing contract [the agreement of sale], not a condition precedent to the existence of the contract itself" *(Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin.,* 189 AD2d 39, 45, *supra* [Casey, J., dissenting]; *see, Allis-Chalmers Mfg. Co. v Malan Constr. Corp.,* 30 NY2d 225, 231, n 4; *see also, Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106, 112). To the contrary, through several provisions of the escrow agreement, petitioners retained the ability to renegotiate the contract terms without being bound by the original agreement. Notably, clauses 9 and 20 of the escrow agreement gave petitioners broad authority to reject the form and content of closing documents, even those to which petitioners were not a party, and clause 18 went so far as to permit petitioners' unilateral withdrawal in the event that the Legislature enacted a gains tax law.

Given that statutory exemptions are strictly construed against the taxpayer *(see, Matter of Grace v New York State Tax Commn.,* 37 NY2d 193, 196; *Matter of Golub Serv. Sta. v Tax Appeals Tribunal,* 181 AD2d 216, 219) "and considerable discretion has been accorded respondent[] in determining

whether the 'written contract' exemption requirement of Tax Law § 1443 (6) has been satisfied" *(Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin., supra, at 43)*, we conclude that O & Y and petitioners did not have a binding contract until after March 28, 1983.

■ As a final matter, we turn to petitioners' argument that the Tribunal considered the evidence de novo in reaching its conclusion and that the Tax Law does not permit such a review. First, we agree with the Tribunal that the determination of whether a binding contract was entered into prior to March 28, 1983 is a legal conclusion and the Tribunal simply did not overrule findings of fact made by the ALJ in reaching its determination here. The Tribunal's interpretation of the legal significance of all the evidence led it to the conclusion that, as of March 28, 1983, there was no binding agreement to sell the Broad Street property. Moreover, 20 NYCRR 3000.11 (e) (1), which provides for de novo review of the ALJ's determination, does not conflict with Tax Law § 2006 (7). Tax Law § 2006 (7) provides that after review of an ALJ's determination, the Tribunal may affirm, reverse or modify that determination. The statute does not indicate that the Tribunal must defer to the findings of the ALJ or give undue weight to any determinations made by the ALJ. In our view, the statutory scheme establishing the Tribunal does not preclude it from exercising de novo review of the ALJ's determination *(see,* Tax Law §§ 2004, 2006 [2], [4], [10]; § 2010 [5]; Governor's Approval Mem, L 1986, ch 282, 1986 McKinney's Session Laws of NY, at 3162-3163; Mem of State Exec Dept, L 1986, ch 282, 1986 McKinney's Session Laws of NY, at 2894, 2898-2899; *New York State Socy. of Enrolled Agents v New York State Div. of Tax Appeals,* 161 AD2d 1, 4-7; *Matter of New York State Dept. of Taxation & Fin. v Tax Appeals Tribunal,* 151 Misc 2d 326, 328-329; *see also, Matter of Sil-Tone Collision v Foschio,* 63 NY2d 406, 411).

MIKOLL, J. P., YESAWICH JR. and CREW III, JJ., concur.

Adjudged that the determination is confirmed, without costs, and petition dismissed.