*453 OPINION OF THE COURT
Alexander, J.
In the circumstances of this appeal, petitioner, a real estate developer, could not have justifiably relied on the provision for a tax exemption from certain increases in the assessed value of property in former section 489 of the Real Property Tax Law at the time he commenced renovation on his two vacant buildings. The amended version of that tax statute, which applies retroactively to prevent petitioner from qualifying for the receipt of the tax exemption, therefore, does not unconstitutionally deprive him of due process.
*454 In April 1982, petitioner purchased two abandoned buildings on West 22nd Street in the Chelsea area of Manhattan that were bricked up and had been continuously vacant for one year. Their last certified use were as class B multiple dwellings for single room occupancy (SRO) (see, Multiple Dwelling Law § 4 [9], [16]). At the time of petitioner’s purchase, former section 489 of the Real Property Tax Law provided in relevant part that "[a]ny city to which the multiple dwelling law is applicable, acting through its local legislative body * * * is * * * empowered, to and including [June 1st, 1982], to adopt and amend local laws * * * providing that any increase in assessed valuation of real property shall be exempt from taxation * * * to the extent such increase results from * * * the conversion of * * * any class B multiple dwelling or class A multiple dwelling used in whole or in part for single room occupancy * * * to a class A multiple dwelling * * * not used in whole or in part for single room occupancy” (RPTL former 489, as amended by L 1977, ch 850, eff Aug. 11, 1977). Pursuant to this enabling legislation, the City of New York had enacted former section J51-2.5 of the Administrative Code of the City of New York, creating the so-called "J-51 program” and providing, in accordance with the enabling legislation, a tax exemption for the renovation of SRO’s. The City provided, by amendment made before 1982, that its J-51 program would be valid to 1984 (see, Local Laws, 1979, No. 77 of City of New York, approved Nov. 14, 1979).
In the hope of obtaining a J-51 tax exemption, petitioner filed the necessary architectural plans to restore the buildings, obtained the appropriate certificates, and secured a building permit in April 1983. Immediately thereafter, he commenced renovation of his two buildings into one class A multiple dwelling containing eight cooperative apartments not certified for single room occupancy. Two months later, however, on June 30, 1983, the Legislature amended RPTL 489 to repeal the tax exemption for the conversion of SRO’s. Moreover, the Legislature provided that the withdrawal of the exemption be applied retroactively to any SRO conversions commenced in the year prior to the effective date of the amendment, i.e., on or after June 1, 1982 (RPTL 489, as amended by L 1983, ch 401, eff June 30, 1983, retroactive to June 1, 1982). While originally, the J-51 program was designed to encourage renovation and development of class B multiple dwellings in order to increase the supply of class A residential housing, the amendment evidences the Legislature’s attempt to preserve *455 what had become recognized as an important but rapidly disappearing source of low-income housing by eliminating the tax incentive to convert SRO’s. Consistent with the new legislative purpose, retroactive application of the amendment sought to discourage SRO owners from acting precipitously— perhaps by questionable means — to vacate their buildings in order to commence conversion before the effective date of the amendment. The same amendment was incorporated into the Administrative Code effective November 7, 1983 and made retroactive to July 1, 1982 (Administrative Code of City of New York § J51-2.5 [i] [6], now § 11-243 [i] [6]). Having commenced the conversion of his two buildings in April 1983, petitioner falls squarely within the retroactive period of both the State and local amendments.
Nevertheless, on January 11, 1984, petitioner applied for real estate tax benefits under the J-51 program. Respondent, the Department of Housing Preservation and Development of the City of New York, determined that, due to the change in the law, petitioner was ineligible for the J-51 tax exemption and denied his application accordingly. In this article 78 proceeding challenging that determination, petitioner argues that he is entitled to the J-51 tax benefit because he acted in reliance on the inducement in the City law and in former RPTL 489, and because retroactive denial of the exemption unconstitutionally deprives him of due process. Supreme Court upheld respondent’s determination and dismissed the petition, holding that the retroactive legislation at issue was constitutional as applied to petitioner. The Appellate Division affirmed.
We agree with both lower courts that the retroactive application of the tax amendment in question does not unconstitutionally deprive petitioner of due process. Retroactivity provisions in tax statutes, if for a short period, are generally valid (Matter of Neuner v Weyant, 63 AD2d 290, appeal dismissed 48 NY2d 975; Clarendon Trust v State Tax Commn., 43 NY2d 933, 934; People ex rel. Beck v Graves, 280 NY 405, 409; Welch v Henry, 305 US 134, 146; Milliken v United States, 283 US 15), and ordinarily are upheld against due process challenges, unless in light of "the nature of the tax and the circumstances in which it is laid”, the retroactivity of the law is "so harsh and oppressive as to transgress the constitutional limitation” (Welch v Henry, 305 US 134, 147, supra). Indeed, retroactive application of property taxes and benefit assessments of real estate have been distinguished from the unfavored retroactiv *456 ity of other kinds of taxes (see, e.g., Untermeyer v Anderson, 276 US 440, 445 [retroactive taxation of inter vivos gift]) on the theory that the taxpayer received some economic benefit from the conduct aside from the tax benefit (see, e.g., Welch v Henry, 305 US 134, supra [retroactive taxation of corporate dividends]). Whether the retroactive application of a tax statute is "harsh and oppressive” is a "question of degree” (People ex rel. Beck v Graves, 280 NY 405, 409, supra), requiring a "balancing of [the] equities” (Clarendon Trust v State Tax Commn., 43 NY2d 933, 934, supra).
In reaching the appropriate balance, several factors may be considered. First, and perhaps predominant, is the taxpayer’s forewarning of a change in the legislation and the reasonableness of his reliance on the old law (see, Matter of Chrysler Props. v Morris, 23 NY2d 515, 521; Matter of Neuner v Weyant, 63 AD2d 290, 300, supra; see also, United States v Hudson, 299 US 498). This inquiry focuses on whether "the taxpayer’s 'reliance’ has been justified under all the circumstances of the case and whether his 'expectations as to taxation [have been] unreasonably disappointed’ ” (Matter of Neuner v Weyant, 63 AD2d 290, 300, supra, quoting Wilgard Realty Co. v Commissioner of Internal Revenue, 127 F2d 514, 517). The strength of the taxpayer’s claim to the benefit may be significant if he has "obtained a sufficiently certain right to the money” prior to the enactment of the new legislation (see, Matter of Chrysler Props. v Morris, 23 NY2d 515, 519, supra). Additionally, the length of the retroactive period often has been a crucial factor, and excessive periods have been held to unconstitutionally deprive taxpayers of a reasonable expectation that they "will secure repose from the taxation of transactions which have, in all probability, been long forgotten” (Matter of Neuner v Weyant, 63 AD2d 290, 302, supra; see, e.g., Matter of Lacidem Realty Corp. v Graves, 288 NY 354, 357 [four-year retroactivity period excessive]; People ex rel. Beck v Graves, 280 NY 405, 409-410, supra [16-year retroactivity period excessive]). Finally, the public purpose for retroactive application is important because of the taxing authority’s legitimate concern that "evasive measures taken after introduction of a bill but before enactment might frustrate the purpose of the legislation” (see, Matter of Neuner v Weyant, 63 AD2d 290, 302, and 299-302, supra; Clarendon Trust v State Tax Commn., 43 NY2d 933, 935, supra [retroactivity too harsh in absence of valid public purpose]).
Here, the relevant considerations do not militate in petition *457 er’s favor. Petitioner concedes that the period of retroactivity —one year — is not excessive. The objectives of the retroactive application — to forestall the loss of SRO housing and to discourage the precipitous eviction of tenants — are valid public purposes. That petitioner’s two buildings were vacant at the time he commenced conversion and therefore no low-income tenants could have been rushed to eviction, does not diminish the fact that petitioner nonetheless caused a further decrease in the SRO housing stock — precisely what the amendment sought to discourage. More importantly, we are persuaded that petitioner could not have justifiably relied on the tax inducement as it existed in 1982. New York City’s J-51 program — although extended by local law to 1984 — was subject to such changes as may have been made in the State enabling legislation itself, which authorized the tax exemption in the first instance. Petitioner was forewarned that the State authorization expired on June 1, 1982 thereby calling into question the continued validity of the local law after that date. With such notice, petitioner may not now claim he entertained a settled reasonable expectation of entitlement to the City’s exemption based upon renovations he did not commence until April 1983. We conclude therefore that respondent’s application of this particular retroactive provision to petitioner did not constitute an unconstitutional deprivation of due process (see, Welch v Henry, 305 US 134, supra).
We have reviewed petitioner’s remaining contentions and find them to be without merit. Accordingly, the order of the Appellate Division should be aifirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order aifirmed, with costs.