[644 NYS2d 926]

Astoria Federal Savings & Loan Association, Appellant, v State of New York et al., Respondents, and City of New York, Intervenor-Respondent.

Second Department, July 8, 1996

### APPEARANCES OF COUNSEL

*Hutton & Solomon,* L.L.P., New York City (*Stephen L. Solomon, Roy F. Hutton, Kenneth I. Moore* and *R. Gordon Abitbol* of counsel), for appellant.

*Dennis C. Vacco, Attorney-General,* New York City (*Carol E. Fiske* and *Bernadine M. Koch* of counsel), for respondents.

*Paul A. Crotty, Corporation Counsel* of New York City (*Edward F. X. Hart* and *Amy F. Nogid* of counsel), for intervenor-respondent.

### OPINION OF THE COURT

FRIEDMANN, J.

On this appeal, we are asked to consider whether Public Authorities Law § 1045-u (3), as originally enacted, exempted the bonds issued by the New York City Municipal Water Finance Authority and the interest they generate from inclusion in a corporate bondholder's entire net income for the purpose of calculating the corporation's New York State and New York City franchise tax obligations. Should the section be susceptible of such a construction, we are additionally asked to determine whether the retroactive application of a 1991 amendment to Public Authorities Law § 1045-u (3) violated existing bondholders' contractual or constitutional rights.

I

In 1984 the New York State Legislature enacted the New York State Local Water and Sewer Authority Act (hereinafter the Act; *see,* L 1984, ch 510; Public Authorities Law § 1196-a *et seq.*). The purpose of the Act was to enable local governments to provide safe and adequate supplies of water and sewerage services to the public, with ease and expedition (*see,* Public

Authorities Law § 1196-a). In furtherance of that aim, it authorized local authorities to obtain financing for water and sewer improvements (*see*, Public Authorities Law § 1196-a). Under the Act, the New York State Legislature had the power to create local water and sewerage authorities (*see*, Public Authorities Law § 1196-c [1]). In addition, the legislation set forth, among other things, the general powers of such authorities (*see*, Public Authorities Law § 1196-d) and the tax consequences of their creation (*see*, Public Authorities Law § 1196-*l*).

Simultaneously with the passage of this Act, the New York State Legislature passed the New York City Municipal Water Finance Authority Act (*see*, L 1984, ch 513, § 2; Public Authorities Law § 1045-a *et seq.* [eff July 24, 1984]). The purpose of the latter was to create alternative financing methods for New York City water projects (*see*, L 1984, ch 513, § 1). This legislation created the corporation known as the New York City Municipal Water Finance Authority (*see*, Public Authorities Law § 1045-c [1]), and gave that Authority the power to issue bonds in order to obtain capital (*see*, Public Authorities Law § 1045-d [3]). Between 1984 and 1990, the State Legislature passed similar legislation creating 11 additional local water and sewer public authorities, all of which were similarly empowered to issue bonds.

The provision at issue here, Public Authorities Law § 1045-u (3), as enacted in 1984, reads as follows: "Any bonds issued pursuant to this title together with the income therefrom as well as the revenues, moneys and all other property and activities of the authority shall be exempt from all taxes and governmental fees or charges, whether imposed by the state or any municipality, including without limitation real estate taxes, franchise taxes, sales taxes or other excise taxes, except for transfer and estate taxes. The state hereby covenants with the purchasers and with all subsequent holders and transferees of bonds issued by the authority pursuant to this title, in consideration of the acceptance of and payment for the bonds, that the bonds of the authority issued pursuant to this title and the income therefrom and all revenues, moneys, and other property pledged to secure the payment of such bonds shall at all times be free from such taxes, except for transfer and estate taxes" (*see also*, Public Authorities Law § 1196-*l* [3]; § 1045-k [4]).

On December 18, 1990, the New York State Department of Taxation and Finance issued a memorandum which addressed the question, posed by some corporate bondholders, of whether

bonds issued by public authorities (including the New York City Municipal Water Finance Authority [hereinafter the Authority]), or the interest from those bonds, were "exempt" from New York State corporate franchise taxation under the language of Public Authorities Law § 1045-u (3). The Department concluded that "the term 'franchise taxes' " in, *inter alia*, Public Authorities Law § 1196-*l* (3) and § 1045-u (3), "refers to and modifies the exemption from taxation of the activities of the Authority but not the bonds or the interest from the bonds of the Authority". Accordingly, the Department concluded, the interest on the bonds should be included in a corporation's computation of its "entire net income" used to determine its franchise taxes. This reading was consistent with the long-standing policy of the New York State Department of Taxation and Finance, which had always required that the interest earned on comparable bonds be considered as income for franchise tax purposes.

In 1991, the New York State Legislature amended Public Authorities Law § 1045-u (3) and related sections (*see*, L 1991, ch 166, §§ 22-36), to read as follows: "Any bonds issued pursuant to this title together with the income therefrom shall be exempt from taxation except for transfer and estate taxes. The revenues, moneys and all other property and activities of the authority shall be exempt from all taxes and governmental fees or charges, whether imposed by the state or any municipality, including without limitation real estate taxes, franchise taxes, sales taxes or other excise taxes. The state hereby covenants with the purchasers and with all subsequent holders and transferees of bonds issued by the authority pursuant to this title, in consideration of the acceptance of and payment for the bonds, that the bonds of the authority issued pursuant to this title and the income therefrom shall be free from such taxation, as aforestated herein, and that all revenues, moneys, and other property pledged to secure the payment of such bonds shall at all times be free from such taxes as aforestated herein" (L 1991, ch 166, § 26).

The preamble to the 1991 amendment set forth that its purpose was to make it "unquestionably clear" and to "reaffirm" that the bonds issued by the Authority and the interest from those bonds had always been subject to indirect taxation, including State and local franchise, estate, gift, and transfer taxes (L 1991, ch 166, § 22). The effective date of the 1991 amendments was retroactive to July 24, 1984 (*see*, L 1991, ch 166, § 406 [d]).

## II

In 1986, the plaintiff, a Federal savings and loan association, purchased water and sewer revenue bonds, Series A, issued by the Authority. The bonds, which accrue interest at an annual rate of .25%, are scheduled to mature on June 15, 2015. The offering statement of the bonds declared: "In the opinion of Bond Counsel, under existing law interest on the Series A Bonds is exempt from Federal income taxes and from personal income taxes levied by New York State or any political subdivision thereof, including The City of New York". Over the ensuing several years, the plaintiff included the revenues from these bonds in its computation of income for franchise tax purposes.

On or about February 26, 1993, the plaintiff commenced this action against the State of New York and the New York State Department of Taxation and Finance, seeking a judgment declaring, *inter alia*, that the language of Public Authorities Law § 1045-u (3), as originally enacted in 1984, exempted the bonds issued by the Authority, and the interest they generate, from inclusion in a corporate bondholder's entire net income for the purpose of calculating a corporation's franchise tax obligations. According to the plaintiff's reading of Public Authorities Law § 1045-u (3), as originally enacted, the exemption from franchise taxes accorded to the Authority in the first sentence of the statute was carried over into the "covenant" with purchasers in the second sentence's promise that all purchasers would similarly be "free from *such* taxes, except for transfer and estate taxes" (emphasis added). To the extent that the 1991 amendment altered the latter promise, the plaintiff argued, it violated constitutional guarantees of due process and rights of contract. In an order dated November 18, 1993, the Supreme Court, Nassau County, granted the City of New York's unopposed motion to intervene.

Thereafter, the plaintiff moved for summary judgment and the State and City cross-moved for summary judgment. The Supreme Court denied the plaintiff's motion, granted the State's and the City's cross motions, and declared that Public Authorities Law § 1045-u (3), as originally enacted, did not exempt bonds issued by the Authority and the interest they generate from inclusion in a corporate bondholder's total net income for the purpose of calculating the corporation's New York City and New York State franchise tax obligations.

We now affirm.

## III

Franchise taxes are excise taxes imposed on corporate entities for the privilege of carrying on a business as a corporation (*see, e.g.,* Black's Law Dictionary 593 [5th ed 1979]; 71 Am Jur 2d, State and Local Taxation, § 266, at 583-584; 24 NY Jur, Franchises, § 1, at 2-4; 37 CJS, Franchises, § 1, at 141-147; 12 McQuillin, Municipal Corporations, Franchises, § 34.03, at 10-11 [3d ed]). A franchise tax is an indirect rather than a direct tax on a corporation's entire net income (*see, Werner Co. v Director of Taxation,* 350 US 492; *Matter of Anchor Sav. Bank v Chu,* 117 AD2d 889). Put somewhat differently, a franchise tax is not levied directly on, for example, bond income or the bonds themselves, even though the amount of the tax is determined by the size of a corporation's total income, including investment income (*see, e.g., Educational Films Corp. v Ward,* 282 US 379, 386-392; *Flint v Stone Tracy Co.,* 220 US 107, 165). Tax Law article 9-A imposes a franchise tax on corporations (Tax Law § 209), and article 32 expressly levies a tax on each banking corporation within the State, "[f]or the privilege of exercising its franchise or doing business in this state in a corporate or organized capacity" (Tax Law § 1451 [a]). Tax Law § 1455 provides that a banking corporation's franchise tax shall be 9% of its entire net income; and "entire net income" is defined as the "total net income from all sources which shall be the same as the entire taxable income * * * (1) which the taxpayer is required to report to the United States treasury department" (Tax Law § 1453 [a]). According to Tax Law § 1453 (b) (1) (B), entire net income should be computed without deducting or excluding "any part of any income from dividends or interest on any kind of stock, securities or indebtedness".

New York City likewise imposes a franchise tax on corporations for the privilege of doing business in the City (*see,* Administrative Code of City of NY § 11-602 [8] [iii] [b] [2]; *Matter of Bankers Trust N. Y. Corp. v Department of Fin.,* 79 NY2d 457, *cert denied* 506 US 870). The City's franchise tax is measured by a corporation's entire net income, and deductions or exclusions for "any part of any income from * * * interest on any kind of stock, securities or indebtedness" are prohibited (Administrative Code § 11-641 [b] [1] [B]).

It is well established that interest paid on State revenue bonds which is exempt from direct taxation is *not* exempt from indirect taxation. Courts have traditionally ruled that such interest *must* be included in the measure of a corporation's

total net income for purposes of calculating the corporation's franchise tax obligation, even when the governing statute provides that the income from a municipal bond, for example, " 'shall at all times be free from taxation, except for estate and gift taxes and taxes on transfers' " (*Matter of Anchor Sav. Bank v Chu, supra*, at 889, quoting Private Housing Finance Law § 54; *see also, Werner Co. v Director of Taxation, supra; Pacific Co. v Johnson*, 285 US 480; *Matter of Forbes, Inc. v Department of Fin.*, 66 NY2d 243, *cert denied* 475 US 1109; *People ex rel. Northern Fin. Corp. v Lynch*, 262 NY 477, *affd* 290 US 601). Moreover, as the Supreme Court remarked herein, the plaintiff concedes that since the enactment in 1933 of the Jones Beach State Parkway Authority Act (L 1933, ch 70 [now Public Authorities Law § 150 *et seq.*]), the Legislature has not passed a single enabling statute whereby a public authority has been empowered to issue a revenue bond whose interest would be exempt from inclusion in the measure of a corporate holder's income for the purpose of computing its franchise taxes.

## IV

Although the challenged legislation is not a tax statute, *any* exemption from taxation " 'must clearly appear' ", and where "a statute or regulation authorizing an exemption is found, it will be 'construed against the taxpayer' " unless the taxpayer can " 'point to some provision of law plainly giving the exemption' " (*Matter of Grace v New York State Tax Commn.*, 37 NY2d 193, 196, quoting *People ex rel. Savings Bank v Coleman*, 135 NY 231, 234, and *Engle v Talarico*, 33 NY2d 237, 240). In other words, the taxpayer claiming an exemption bears the heavy burden of establishing that clear and unambiguous statutory language creates such an entitlement (*Matter of Alamo Assocs. v Commissioner of Fin. of City of N. Y.*, 71 NY2d 340, 343; *Matter of Mobil Oil Corp. v Finance Adm'r of City of N. Y.*, 58 NY2d 95, 99). The taxpayer must prove not only that his interpretation of the statute is plausible, but that it is the only reasonable construction (*see, Matter of 1605 Book Ctr. v Tax Appeals Tribunal*, 83 NY2d 240, 244, *cert denied* — US —, 115 S Ct 61; *Matter of Moran Towing & Transp. Co. v New York State Tax Commn.*, 72 NY2d 166, 172-173; *Matter of Great Lakes Dredge & Dock Co. v Department of Taxation & Fin.*, 39 NY2d 75, 79, *cert denied* 429 US 832). The plaintiff has failed to show such an unequivocal entitlement here.

As the Supreme Court aptly observed, Public Authorities Law § 1045-u (3), as originally written, was "inartfully drafted"

and is in consequence ambiguous in that, among other things, it appears to exempt bondholders from the payment of "real estate" taxes on their bonds and/or the income therefrom—a situation that could not possibly arise. In addition, by its plain language it exempts bonds and the interest on bonds from "franchise taxes", when, as noted above, only *corporations* are subject to franchise taxes. Finally, although even the plaintiff agrees that such an exemption of interest income from indirect taxation would have been an extraordinary event, and one without precedent in New York's legislative history, the plaintiff would have us believe that the Legislature granted this exemption without so much as a word in the historical record to signal that it was departing from several decades of established practice (*cf.*, L 1991, ch 166; Mem of State Exec Dept, 1991 McKinney's Session Laws of NY, at 1940-1945).

It is well settled that where the language of a statute is ambiguous, or where a literal construction would lead to absurd or unreasonable consequences that appear contrary to the purpose of the enactment, the courts may resort to other aids, such as the legislative history of the statute, to arrive at its true intended meaning (*see, e.g., Matter of Auerbach v Board of Educ.*, 86 NY2d 198, 204; *see also, Patrolmen's Benevolent Assn. v City of New York*, 41 NY2d 205, 208; *Doctors Council v New York City Employees' Retirement Sys.*, 71 NY2d 669, 674-675; *see also*, McKinney's Cons Laws of NY, Book 1, Statutes § 76).

There is no indication in the legislative history of Public Authorities Law § 1045-u (3) that the Legislature intended to create an exception to the State and City franchise tax law, or that it contemplated that the interest from such bonds would be excludable from a corporation's entire net income. Rather, the history reflects only an intention to finance local water and sewer districts through revenue bonds as opposed to general obligation bonds (*see*, L 1984, chs 509, 513; Governor's Approval Mem, 1984 McKinney's Session Laws of NY, at 3610-3611; Mem of legislative representative of City of New York, 1984 Mc-Kinney's Session Laws of NY, at 3330). As noted above, the income from such revenue bonds has traditionally been included in the measure of a corporate bondholder's total net income for franchise tax computation purposes, in New York as well as in other jurisdictions.

Both the language of the 1984 enactment and the surrounding history evince the Legislature's intention that only *the Authority* would be exempt from franchise taxes (*compare, e.g.,*

Public Authorities Law § 1296 [8] [L 1967, ch 722, § 1, as amended]; §§ 1299-qq [L 1969, ch 1124, § 2], 1316 [L 1970, ch 460, § 2], exempting comparable public authorities from franchise taxes). In contrast, the instruments in the hands of the bondholders and the interest earned on them were to be exempt only from *direct* taxes, such as income taxes. Significantly, the bonds were not marketed on the basis of the unusual tax advantage asserted for them by the plaintiff. Accordingly, the plaintiff has failed to carry its heavy burden of proving that, under a proper construction of the 1984 enactment, it was entitled to the exemption claimed (*see, e.g., Matter of Alamo Assocs. v Commissioner of Fin. of City of N. Y., supra,* at 343; *Matter of Colt Indus. v New York City Dept. of Fin.,* 66 NY2d 466, 471; *Matter of Mobil Oil Corp. v Finance Adm'r of City of N. Y., supra,* at 99).

## V

Also weighing in against the plaintiff's construction of Public Authorities Law § 1045-u (3) is the fact that both the State and the municipal franchise tax statutes quoted above expressly *require* that bond interest be included in any calculation of a corporation's entire net income. Accordingly, if the plaintiff's reading of the Public Authorities Law were to be adopted, the provision in question would conflict with Tax Law § 1453 and Administrative Code § 11-602 *et seq.* However, it is a well-established rule of statutory construction that where an enactment is susceptible of two readings, one of which would cause it to conflict with other laws while the other would not, the latter reading is to be preferred (*see, e.g.,* McKinney's Cons Laws of NY, Book 1, Statutes §§ 98, 141-145, 150, 152, 153, 221-223; *Matter of Burger King v State Tax Commn.,* 51 NY2d 614, 620-621).

Moreover, the plaintiff's interpretation of Public Authorities Law § 1045-u (3) would cause New York State and City franchise tax enactments to violate Federal law (*see, Memphis Bank & Trust Co. v Garner,* 459 US 392; *Werner Co. v Director of Taxation, supra*). 31 USC § 3124 (a) provides that "[s]tocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State", *except, inter alia,* for franchise taxes—provided that such franchise taxes are "nondiscriminatory". For example, a State enactment that purports to exempt the interest from State bonds from a corporation's income for State franchise tax purposes while not according a similar advantage to *Federal*

investments is "discriminatory" and in consequence unconstitutional (*see, Commonwealth v Curtis Pub. Co.*, 363 Pa 299, 69 A2d 410, *cert denied* 339 US 928). The plaintiff's reading of Public Authorities Law § 1045-u (3) would therefore render that enactment discriminatory and unconstitutional, because the interest from New York's public authority bonds would be exempted from income used to determine franchise taxes, while the interest from comparable Federal obligations would not receive a similar benefit (*see, Memphis Bank & Trust Co. v Garner, supra; Werner Co. v Director of Taxation, supra; Commonwealth v Curtis Pub. Co., supra*). However, it is incumbent upon the courts "to avoid interpreting a statute in a way that would render it unconstitutional if such a construction can be avoided and to uphold the legislation if any uncertainty about its validity exists" (*Alliance of Am. Insurers v Chu*, 77 NY2d 573, 585; *see also*, McKinney's Cons Laws of NY, Book 1, Statutes § 150 [c]).*

Finally, yet another rule of statutory construction requires that the plaintiff's arguments be rejected. That is, where recourse is had to the Tax Commissioner for his interpretation of a rule involving taxation, the courts should defer to his interpretive expertise, unless his reading of the statute is clearly unreasonable, irrational, or palpably contrary to the Legislature's intention (*see, e.g., Matter of Industrial Indem. Co. v Cooper*, 81 NY2d 50, 54; *Matter of Unimax Corp. v Tax Appeals Tribunal*, 79 NY2d 139, 144-145; *Matter of Colt Indus. v New York City Dept. of Fin., supra*, at 471; *Matter of American Tel. & Tel. Co. v State Tax Commn.*, 61 NY2d 393, 400). In its memorandum of December 18, 1990, the Tax Department ruled emphatically that Public Authorities Law § 1045-u (3) did *not* exempt a corporation's bond interest from its "entire net income" for franchise tax computation purposes. Because this reading is at once eminently rational and maintains the constitutionality of the State and City franchise tax laws, it must be upheld (*see, Matter of Industrial Indem. Co. v Cooper,*

---

* It is worthy of note that a further proof that the Legislature did not intend the plaintiff's construction of Public Authorities Law § 1045-u (3) lies in the fact that the enactment fails to provide for a parallel exemption for Federal securities, which it assuredly would have done had it expected such legislation to survive judicial scrutiny (*see, e.g., Commonwealth v Curtis Pub. Co., supra*). However, it is additionally not reasonable to suppose that the Legislature intended to obtain revenues for the State by exempting *its* bonds from taxation, while in the same piece of legislation eliminating the substantial income the State derives from indirectly taxing comparable Federal securities.

*supra,* at 54; *Matter of Unimax Corp. v Tax Appeals Tribunal, supra,* at 144-145; *Matter of American Tel. & Tel. Co. v State Tax Commn., supra,* at 400).

## VI

Although, in view of the foregoing determination we need not address the plaintiff's remaining contentions regarding the 1991 rewriting of Public Authorities Law § 1045-u (3), we believe it to be worthy of underscoring that the challenged amendment was promulgated to *clarify* the 1984 enactment, and not to change it (*see, e.g., Mayblum v Chu,* 67 NY2d 1008, 1010; *Matter of Eastern Milk Producers Coop. Assn. v State of N. Y. Dept. of Agric. & Mkts.,* 58 NY2d 1097, 1101).

However, assuming, arguendo, that the 1991 legislation changed the 1984 law so as to retroactively eliminate an exemption from taxation, there was no abridgement of the plaintiff's due process rights because the retroactive application was not "harsh and oppressive" (*Welch v Henry,* 305 US 134, 147, *reh denied* 305 US 675; *Canisius Coll. v United States,* 799 F2d 18, 25, *cert denied* 481 US 1014). In this context, we note that the plaintiff did not claim its exemption immediately upon purchasing Authority bonds in 1986, but rather waited until 1993 before suing to "recoup" the franchise taxes that it had been paying as a matter of course. There was therefore never any detrimental reliance, justifiable or otherwise, by the plaintiff or anyone else, on the purported "exemption", with the result that it cannot seriously be argued that the retroactive denial of an exemption which nobody claimed is "harsh" or "oppressive" (*see, e.g., Matter of Replan Dev. v Department of Hous. Preservation & Dev.,* 70 NY2d 451, 455-456, *appeal dismissed* 485 US 950; *Matter of Neuner v Weyant,* 63 AD2d 290, 300). Moreover, to the extent that the plaintiff professes to have been "disappointed" in its expectation of a tax exemption, we find that such an "expectation" was not "reasonable" under the circumstances (*see, e.g., Matter of Replan Dev. v Department of Hous. Preservation & Dev., supra,* at 456).

Finally, even the passage of six years does not suffice to render retroactive application of the instant amendment "harsh" or "oppressive" (*see, e.g., Matter of Replan Dev. v Department of Hous. Preservation & Dev., supra; Matter of Neuner v Weyant, supra,* at 302; *Matter of Lacidem Realty Corp. v Graves,* 288 NY 354; *People ex rel. Beck v Graves,* 280 NY 405, 409). Had the plaintiff brought its claim of "entitlement" to the attention of the authorities more promptly—for example,

by paying its franchise taxes under protest—the Legislature may have learned of and undertaken to remedy the problem sooner. Parenthetically, the plaintiff's rather lengthy delay in asserting its entitlement to the purported "exemption" also serves to cast doubt upon its threshold argument that the 1984 statute is "clear" and "unambiguous" on its face.

Accordingly the order and judgment is affirmed.

ROSENBLATT, J. P., COPERTINO and ALTMAN, JJ., concur.

Ordered that the order and judgment is affirmed, with one bill of costs to the respondent and intervenor-respondent appearing separately and filing separate briefs.