OPINION OF THE COURT
Richter, J.
In this appeal, we are asked to decide whether an amendment to the Tax Law enacted on August 11, 2010 can be applied retroactively to a transaction entered into by plaintiffs on February 1, 2007, more than 3x/2 years earlier. Applying the balancing test set forth by the Court of Appeals, we conclude that the retroactive application of the amendment as to plaintiffs is impermissible. Plaintiffs reasonably relied on the old law in structuring the transaction, and had no forewarning of the change in the legislation. In light of plaintiffs’ reliance, the excessive length of the retroactive period, and the absence of a compelling public purpose, a due process violation occurred.
Plaintiffs, a married couple who reside in Florida, are the former owners and sole shareholders of Tri-Maintenance & Contractors, Inc. (TMC), a company that provides janitorial and other services. TMC, which conducts some of its business in New York, was incorporated in New Jersey, and had elected to be treated as an S-corporation for federal and New York State purposes. Under both the Internal Revenue Code and the New York Tax Law, S-corporations are permitted to avoid corporate income taxes by passing through income and losses to shareholders for inclusion in their individual federal and state income tax returns {see Internal Revenue Code [IRC] [26 USC] §§ 1361-1379; Tax Law § 660).
Pursuant to a stock purchase agreement dated February 1, 2007, plaintiffs sold all of their shares of TMC stock to Sanitors *171 Services, Inc. for a base price of approximately $20 million, plus certain additional contingent payments. The agreement was structured so that Sanitors would pay the base price in two installments with interest: (1) an initial payment of approximately $19.5 million on March 1, 2007; and (2) the remaining sum of $500,000 on February 1, 2008. On the February 1, 2007 closing date of the transaction, Sanitors gave plaintiffs promissory notes for the installment obligations.
The parties’ agreement also provided that they would jointly make an election pursuant to IRC § 338 (h) (10). That provision allowed the transaction to be treated, for federal tax purposes, as a sale of TMC’s assets, immediately followed by a complete liquidation of TMC. Thus, TMC was deemed to have sold all of its assets to Sanitors in exchange for the promissory notes that plaintiffs received, and deemed to have made a distribution of the notes to plaintiffs. Under IRC § 331 (a), the amounts received by plaintiffs in the distribution in complete liquidation of TMC “shall be treated as in full payment in exchange for the stock.”
Because TMC and plaintiffs received installment obligations (i.e., the promissory notes) in exchange for the TMC stock, they elected to use the installment method of accounting (see IRC §§ 453, 453B; see also Tax Law § 605 [a] [3] [requiring New York taxpayers to use same accounting method used for federal income tax purposes]). Generally speaking, under the installment method, gains are recognized only when cash payments are actually received. Under IRC § 453B (h), an S-corporation that distributes an installment obligation in a complete liquidation does not recognize any gain or loss with respect to the distribution. On its 2007 federal and New York State S-corporation tax returns for the short taxable year ending February 1, 2007 (the date of the transaction), TMC did not report any realized gain on the transaction. According to plaintiffs, no gain was reported because TMC had not received any cash payments from Sanitors (but only had received the installment obligations), and because no gain was realized with respect to the deemed distribution pursuant to IRC § 453B (h).
The gain was, however, reported on plaintiffs’ individual federal tax returns. IRC § 453 (h) (1) (A) provides that a shareholder who receives an installment obligation in exchange for stock in a section 331 (a) liquidation does not recognize income upon receipt of the obligation, but only upon receipt of the payments thereunder. Such payments, when received by the *172 shareholder, “shall be treated as the receipt of payment for the stock” (IRC § 453 [h] [1] [A]). Plaintiffs received the first installment payment under the promissory notes on March 1, 2007, which resulted in a capital gain of over $18 million. Plaintiffs reported this amount on their 2007 individual federal income tax return as a gain from the installment sale of their TMC stock. Plaintiffs also reported a gain of over $1 million on their 2008 federal return in connection with the second installment payment for the stock.
Plaintiffs, however, did not pay New York State taxes on these gains. New York State levies personal income tax on nonresident individuals only to the extent their income is derived from or connected to New York sources (Tax Law § 601 [e]). Under Tax Law § 631 (b) (2), gains received by nonresidents from the disposition of intangible personal property, such as stock, are not considered to be derived from a New York source unless the stock itself (as opposed to the underlying assets of the corporation) is “employed in a business, trade, profession, or occupation carried on in [New York]” (see also 20 NYCRR 132.5 [a]; 132.8 [c]). Here, there is no allegation that the TMC stock itself was used in a New York trade or business. Thus, because IRC § 453 (h) (1) (A) treats the installment payments as the receipt of payments for stock, plaintiffs did not report the gains as derived from a New York source on their 2007 and 2008 New York nonresident individual tax returns.
In June 2009, the New York State Division of Tax Appeals issued a ruling involving an installment transaction similar to the one here. In Matter of Mintz (2009 WL 1657395, 2009 NY Tax LEXIS 46 [NY St Div of Tax Appeals DTA Nos. 821807, 821806, June 4, 2009]), an administrative law judge (ALJ) held that the nonresident shareholders of an S-corporation did not have New York source income for payments they received under an installment obligation distributed by the S-corporation in an IRC § 331 liquidation governed by IRC § 453 (h) (1) (A). The ALJ concluded that since the installment payments the shareholders received were gains from the sale of stock held by a nonresident, they were not includable as New York source income and thus not subject to taxation by New York State. The result in Mintz is consistent with plaintiffs’ treatment of their gain as coming from the sale of stock not taxable by New York.
Defendant New York State Department of Taxation and Finance (the Tax Department) subsequently proposed legislation to override the Mintz decision and to provide that the type *173 of transaction at issue here would result in taxable New York Sate income. As relevant here, in August 2010, the following sentence, drafted by the Tax Department, was added to Tax Law § 632 (a) (2):
“If a nonresident is a shareholder in an S corporation . . . and the S corporation has distributed an installment obligation under section 453 (h) (1) (A) of the Internal Revenue Code, then any gain recognized on the receipt of payments from the installment obligation for federal income tax purposes will be treated as New York source income” (L 2010, ch 57, § 1, part C, as amended by L 2010, ch 312, § 1, part B [the 2010 amendment]).[1]
This new provision of the Tax Law applied to taxable years beginning on or after January 1, 2007, a more than 3V2 year period of retroactivity.[2]
In February 2011, six months after the new legislation was enacted, the Tax Department issued a notice of deficiency with respect to plaintiffs’ 2007 and 2008 state income tax returns, assessing approximately $775,000 in additional taxes and interest due as a result of the TMC transaction. Plaintiffs then commenced this action seeking a declaration that the retroactive application of the 2010 amendment, as to them, violates the Due Process Clauses of the federal and state constitutions. Plaintiffs named as defendants the Tax Department, its commissioner and mediation bureau, the State of New York and Governor Andrew M. Cuomo. Plaintiffs also sought an injunction preventing defendants from enforcing the notice of deficiency against them.
Defendants moved for summary judgment dismissing the complaint, and plaintiffs cross-moved for summary judgment in their favor. The parties agreed that their respective motions raised an issue of law that could be decided without the need for developing a more detailed factual record. In an order entered September 25, 2012, the motion court denied plaintiffs’ cross motion, granted defendants’ motion, and dismissed the complaint (37 Misc 3d 964 [2012]). A judgment was subsequently *174 entered on November 5, 2012 dismissing the complaint.[3] Plaintiffs appeal and we now reverse.[4]
Retroactive legislation is generally looked upon with disfavor and distrust (James Sq. Assoc. LP v Mullen, 21 NY3d 233, 246 [2013]). Nevertheless, retroactive provisions of tax legislation are not necessarily unconstitutional, and can be considered valid if they allow for a “short period” of retroactivity (id.). “The courts must examine, in light of the nature of the tax and the circumstances in which it is laid, [whether] the retroactivity of the law is so harsh and oppressive as to transgress the constitutional limitation” (id. [internal quotation marks omitted]).
Determining whether the retroactive application of a tax statute violates a taxpayer’s due process rights “is a question of degree” and “requires] a balancing of [the] equities” (Matter of Replan Dev. v Department of Hous. Preserv. & Dev. of City of N.Y., 70 NY2d 451, 456 [1987], appeal dismissed 485 US 950 [1988] [internal quotation marks omitted]). In James Sq., the Court of Appeals recently reaffirmed a three-prong test to determine whether the retroactive application of a tax statute passes constitutional muster.
“The important factors in determining whether a retroactive tax transgresses the constitutional limitation are (1) ‘the taxpayer’s forewarning of a change in the legislation and the reasonableness of . . . reliance on the old law,’ (2) ‘the length of the retroactive period,’ and (3) ‘the public purpose for retroactive application’ ” (21 NY3d at 246, quoting Matter of Replan, 70 NY2d at 456).
With respect to the first factor, which has been described as the “predominant” factor (Replan, 70 NY2d at 456), plaintiffs here had no actual forewarning of the change made by the 2010 amendment. Indeed, the amendment was not even proposed to the legislature until after the Mintz decision was issued in June 2009, long after plaintiffs had entered into the February 2007 TMC transaction. Thus, plaintiffs had “no warning and no opportunity [in 2007] to alter their behavior in anticipation of the impact of the [2010 amendment]” (James Sq., 21 NY3d at 248).
*175 The dissent argues that plaintiffs could not have relied on the Mintz decision because it was decided two years after the TMC transaction. Plaintiffs, however, do not allege reliance on Mintz. Instead, they argue that they structured the TMC transaction reasonably relying on the law as it previously existed. There is no dispute that, prior to the 2010 amendment, the Tax Law contained no specific provision governing a nonresident’s receipt of payments from an S-corporation’s distribution of an installment obligation under IRC § 453 (h) (1) (A). Plaintiffs make a compelling argument that under the previous law, those payments were not taxable by New York. As noted earlier, under IRC § 453 (h) (1) (A), a shareholder who receives an installment obligation in exchange for stock in a section 331 (a) liquidation recognizes income upon receipt of payments on the obligation, and such payments “shall be treated as the receipt of payment for the stock.” Because New York Tax Law § 631 (b) (2) provides, as a general matter, that a nonresident’s sale of stock is not taxable, plaintiffs’ reasonably relied on existing law to conclude their installment payments were not taxable by New York.
Defendants’ primary argument to the contrary is not based on a different reading of the then-applicable laws, but instead is rooted in their claim that New York had a longstanding practice of taxing S-corporation shareholders for transactions like the TMC sale.[5] The dissent echoes this argument, repeatedly referring to the Tax Department’s purported long-established policy. The only proof that such a policy existed, however, is an isolated 2002 PowerPoint presentation made to Tax Department auditors purportedly reflecting such a practice. Even if such a policy were in existence, the record contains no evidence that the Tax Department took any steps to inform taxpayers of its policy. Nor is there any evidence that the internal PowerPoint presentation was made publicly available, or that plaintiffs, when they structured the 2007 transaction, had any other knowledge of the Tax Department’s alleged practice. We disagree with the dissent that plaintiffs were required to have sought an advisory opinion from the Tax Department before entering into the TMC transaction. A reasonable reading of the Tax Law, as it existed *176 in February 2007, is that the transaction was not subject to New York tax, and plaintiffs had no knowledge of the Tax Department’s contrary view. Thus, they had no reason to seek clarification from the Tax Department.
Defendants argue that plaintiffs cannot establish reasonable reliance because they did not submit evidence on how they would have structured the TMC transaction differently had they known it could subject them to New York taxation. However, the law does not require plaintiffs to show a specific proposed alternative course of action to satisfy the element of reasonable reliance. Rather, the proper inquiry is whether plaintiffs “conducted their business affairs in a manner consistent with [the previous law], justifiably relying on the receipt of the tax benefits that were then in effect” (James Sq., 21 NY3d at 248; see Matter of Replan, 70 NY2d at 456 [reliance factor focuses on whether the taxpayer’s expectations as to taxation have been unreasonably disappointed]).[6] Because plaintiffs structured the TMC transaction in reasonable reliance on the previous law, and in the absence of any evidence that they had any forewarning of the change in the law, the first James Sq. factor weighs in their favor.
The second James Sq. factor, the length of the retroactive period, also favors plaintiffs. Excessive periods of retroactivity “have been held to unconstitutionally deprive taxpayers of a reasonable expectation that they will secure repose from the taxation of transactions which have, in all probability, been long forgotten” (Matter of Replan, 70 NY2d at 456 [internal quotation marks omitted]). As noted earlier, retroactive application of tax laws can be considered valid if they provide for a “short period” of retroactivity (James Sq., 21 NY3d at 246). In James Sq., the Court concluded that a retroactive period of 16 months “should be considered excessive and weighs against the State” (21 NY3d at 249). Here, the period of retroactivity was 3V2 years—nearly three times longer than the period found excessive in James Sq. As in James Sq., we conclude that this excessive period was “long enough ... so that plaintiffs gained a reasonable expectation that they would secure repose in the existing tax scheme” (id. [internal quotation marks omitted]; see Matter of Lacidem Realty Corp. v Graves, 288 NY 354 [1942] *177 [four-year retroactive period invalidated as harsh and oppressive]).
Defendants contend that longer periods of retroactivity may be warranted where tax legislation does not impose a wholly new tax, but is a curative measure meant to correct errors (see James Sq., 21 NY3d at 249). The parties sharply dispute whether the 2010 amendment is a new tax or was designed to correct a previous legislative error. The dissent points to the preamble of the legislation, which shows that the 2010 amendment was intended to make the law consistent with the Tax Department’s (unpublished) policy, and to overturn an administrative decision that failed to account for this policy. Tellingly, defendants point to no legislative history that indicates that the legislature was correcting any specific error in the existing law, as opposed to amending the law to account for the Tax Department’s purported policy. Thus, contrary to the dissent’s view, the legislative history does not support a view that the 2010 amendment was a curative measure.
Plaintiffs, on the other hand, persuasively argue that the 2010 amendment created an exception to the general rule, set forth in Tax Law § 631 (b) (2), that gains from a nonresident’s sale of stock (not used in a New York business) are not subject to New York taxation. Under the 2010 amendment, the particular stock sale engaged in here is now unquestionably subject to New York taxation, and thus can fairly be considered a new tax. Because the 2010 amendment cannot be reasonably viewed as merely correcting a legislative error, the longer period of retroactivity urged by defendants is not warranted, and on balance, the second James Sq. factor weighs against defendants.
The final James Sq. factor is the public purpose for the retroactive application of the 2010 amendment. Although a close question, on balance, plaintiffs have the better argument. The legislative history indicates that enactment of the legislation was necessary to implement the 2010-2011 executive budget by raising tax revenues by $30 million in that fiscal year. Indeed, defendants expressly state in their brief that the legislature made the law retroactive to prevent revenue loss. But “raising money for the state budget is not a particularly compelling justification” and “is insufficient to warrant retroactivity in a case [as here] where the other factors militate against it” (James Sq., 21 NY3d at 250). Defendants’ argument that retroactivity is necessary so that other taxpayers are not unfairly burdened while plaintiffs receive a windfall is just another way of saying *178 that the legislation is necessary to raise tax revenues. Indeed, we take issue with the dissent’s use of the term “windfall” because if plaintiffs were merely following the law as it existed at the time they originally filed their state tax returns, there is nothing unfair about the result here. In any event, although apportionment of tax liability among various groups of taxpayers is a laudable goal, defendants offer no convincing rationale for applying the 2010 amendment retroactively instead of only prospectively.
Accordingly, the judgment of the Supreme Court, New York County (Paul G. Feinman, J.), entered November 5, 2012, dismissing the complaint, and bringing up for review an order, same court and Justice, entered September 25, 2012, which granted defendants’ motion for summary judgment and denied plaintiffs’ cross motion for summary judgment declaring unconstitutional the retroactive application of the 2010 amendment to Tax Law § 632 (a) (2) as to them, should be reversed, on the law, without costs, the judgment vacated, it is declared that the retroactive application as to plaintiffs of the 2010 amendment to Tax Law § 632 (a) (2) resulted in a due process violation, and defendants are hereby enjoined from enforcing the notice of deficiency. The Clerk is directed to enter judgment accordingly.
Andrias, J. (dissenting). Tax Law § 632 (a) (2), as amended in August 2010 (L 2010, ch 57, § 1, part C, as amended by L 2010, ch 312, § 1, part B), provides that nonresident subchapter S shareholders who sell their interests in an S-corporation pursuant to an election under Internal Revenue Code (26 USC) § 338 (h) (10) or § 453 (h) (1) (A) are to be taxed in accordance with that election and that the transaction is to be treated as an asset sale producing New York source income. The issue before us is whether the retroactive application of the 2010 amendments to assess additional taxes on plaintiffs for the 2007 and 2008 tax years violates the Due Process Clauses of the United States and New York State constitutions.
The majority finds that the retroactive application of the 2010 amendments to plaintiffs violates their due process rights in light of plaintiffs’ reasonable reliance on the Tax Law as it existed in 2007 and the lack of forewarning of the 2010 changes, the length (3V2 years) of the retroactive period, and the absence of a compelling public purpose. Because I agree with the motion court that the retroactivity provision and the duration of the retroactivity period are rationally related to the legitimate purpose behind the amendments and within the reasonable *179 expectations of a taxpayer, and that plaintiffs failed to sufficiently demonstrate detrimental reliance on the pre-2010 law, I respectfully dissent.
Plaintiffs, residents of Florida, were the sole shareholders of Tri-Maintenance & Contractors, Inc. (TMC), incorporated in New Jersey as an S-corporation for federal and New York State income tax purposes. Pursuant to a stock purchase agreement dated February 1, 2007, plaintiff sold their TMC stock to Sanitors Services, Inc. for a base price of $20 million, payable in installments of $19.5 million on March 1, 2007, and $500,000 on February 1, 2008. As part of the sale, the parties made an election under Internal Revenue Code (IRC) (26 USC) § 338 (h) (10) to treat the transaction as an asset sale. TMC also elected to use the installment method of accounting under which gains are generally recognized when cash payments are actually received (IRC §§ 453, 453B; see also Tax Law § 605 [a] [3]).
On their individual federal tax returns for the taxable years 2007 and 2008, plaintiffs reported a gain from the installment asset sale of $18 million and $1 million respectively. However, on their New York State returns for those years, plaintiffs treated the installment payments as payments received in exchange for their stock that were not subject to state tax, given plaintiffs’ nonresident status.
In 2009, administrative decisions in Matter of Baum (2009 WL 427425, 2009 NY Tax LEXIS 17 [NY St Div of Tax Appeals DTA Nos. 820837, 820838, Feb. 12, 2009]) and Matter of Mintz (2009 WL 1657395, 2009 NY Tax LEXIS 46 [NY St Div of Tax Appeals DTA No. 821807, 821806, June 4, 2009]) held that an S-corporation transaction could be treated as an asset sale for federal income tax, but as a stock sale for New York State income tax. According to the Department of Taxation and Finance (DTF), these rulings contravened its long-established policy of parallel treatment and created the risk of substantial, unintended tax loopholes, potentially immunizing hundreds of past transactions from all New York State tax liability.
To override Baum and Mintz, DTF sought to obtain amendments to Tax Law § 632 (a) (2), which in 2010 was amended, as follows:
“In determining New York source income of a nonresident shareholder of an S corporation where the election provided for in subsection (a) of section six hundred sixty of this article is in effect, there shall be included only the portion derived from or con *180 nected with New York sources of such shareholder’s pro rata share of items of S corporation income, loss and deduction entering into his federal adjusted gross income, increased by reductions for taxes described in paragraph two and three of subsection (f) of section thirteen hundred sixty-six of the internal revenue code, as such portion shall be determined under regulations of the commissioner consistent with the applicable methods and rules for allocation under article nine-A or thirty-two of this chapter, regardless of whether or not such item or reduction is included in entire net income under article nine-A or thirty-two for the tax year. If a nonresident is a shareholder in an S corporation where the election provided for in subsection (a) of section six hundred sixty of this article is in effect, and the S corporation has distributed an installment obligation under section 453 (h) (1) (A) of the Internal Revenue Code, then any gain recognized on the receipt of payments from the installment obligation for federal income tax purposes will be treated as New York source income allocated in a manner consistent with the applicable methods and rules for allocation under article nine-A or thirty-two of this chapter in the year that the assets were sold. In addition, if the shareholders of the S corporation have made an election under section 338 (h) (10) of the Internal Revenue Code, then any gain recognized on the deemed asset sale for federal income tax purposes will be treated as New York source income allocated in a manner consistent with the applicable methods and rules for allocation under article nine-A or thirty-two of this chapter in the year that the shareholder made the section 338 (h) (10) election. For purposes of a section 338 (h) (10) election, when a nonresident shareholder exchanges his or her S corporation stock as part of the deemed liquidation, any gain or loss recognized shall be treated as the disposition of an intangible asset and will not increase or offset any gain recognized on the deemed assets sale as a result of the section 338 (h) (10) election” (see L 2010, ch 57, § 1, part C, § 2) (emphasis added to language added by the 2010 amendment).
The amendments were made retroactive, and apply
“to taxable years beginning on or after January 1, *181 2007 for which the statute of limitations for seeking a refund or assessing additional tax is still open, provided, however, that in cases of failure to file, failure to report federal changes, or filing a false or fraudulent return with intent to evade tax, as specified under paragraph 1 of subsection (c) of section 683 of the tax law, or in cases of substantial omission of income under subsection (d) of section 683 of the tax law, it shall apply to all taxable years as long as such statute of limitations remain open and are subject to assessment” (L 2010, ch 57, § 1, part C, § 4, as amended by L 2010, ch 312, § 1, part B, § 1).
On February 7, 2011, DTF issued a notice of deficiency with respect to plaintiffs’ 2007 and 2008 state income tax returns, assessing approximately $775,999 in additional taxes and interest as a result of the TMC sale. Asserting that the deficiency was “attributable entirely” to DTF’s retroactive application of the 2010 amendments to Tax Law § 632 (a) (2), plaintiffs commenced this action alleging that, in violation of their federal and state due process rights, the 2010 amendments imposed
“a tax for the first time on the gain recognized on payments received from installment obligations distributed under Section 453 (h) (1) (A) of the Code, and . . . provide [d] an excessive period of retroactivity of three and one-half years as applied to [plaintiffs], thereby creating a hard and oppressive effect on the settled expectations of” plaintiffs.
In their answer, defendants, among other things, denied that the assessment was attributed entirely to the 2010 amendments.
In determining whether the retroactivity provisions of a tax statute should be upheld, “[t]he courts must examine, in light of the nature of the tax and the circumstances in which it is laid, [whether] the retroactivity of the law is so harsh and oppressive as to transgress the constitutional limitation” (James Sq. Assoc. LP v Mullen, 21 NY3d 233, 246 [2013] [internal quotation marks omitted]). The determination requires a balancing of the equities based on the facts and circumstances of each case, including a consideration of “(1) ‘the taxpayer’s forewarning of a change in the legislation and the reasonableness of . . . reliance on the old law,’ (2) ‘the length of the retroactive period,’ and (3) ‘the public purpose for retroactive application’ ” (James Sq., 21 NY3d at 246, quoting Matter of Replan Dev. v Department of Hous. Preserv. & Dev. of City of *182 N.Y., 70 NY2d 451, 456 [1987], appeal dismissed 485 US 950 [1988]). “Notably, when legislation is curative, retroactivity may be liberally construed” (Matter of Moran Towing Corp. v Urbach, 1 AD3d 722, 724 [3d Dept 2003]; see also United States v Carlton, 512 US 26 [1994]).
Here, the legislative findings leave no question that the 2010 amendments were a curative measure:
“Legislative findings. The legislature finds that it is necessary to correct a decision of the tax appeals tribunal and a determination of the division of tax appeals that erroneously overturned the longstanding policies of department of taxation and finance that nonresident subchapter S shareholders who sell their interest in an S corporation pursuant to an election under section 338 (h) (10) or section 453 (h) (1) (A) of the Internal Revenue Code, respectively, are taxed in accordance with that election and the transaction is treated as an asset sale producing New York source income. Section two of this act is intended to clarify the concept of federal conformity in the personal income tax and is necessary to prevent confusion in the preparation of returns, unintended refunds, and protracted litigation of issues that have been properly administered up to now” (L 2010, ch 57, § 1, part C, § 1; see also Mem in Support of 2010-2011 Executive Budget at 13 [“Section 2 of the bill would clarify that shareholders of a subchapter S corporation that made an election under IRC §§ 338 (h) (10) and 453 are required to treat the income as income from the sale of New York assets, and not a stock sale as held in the Baum and Mints cases”]).
Given DTF’s long-established policy of parallel treatment, plaintiffs cannot establish “cognizable detrimental reliance” (Matter of Varrington Corp. v City of N.Y. Dept. of Fin., 85 NY2d 28, 35 [1995] [two-year period of retroactivity upheld where taxpayer did not detrimentally rely on the temporarily altered tax policy]). Plaintiffs could not have relied on Mints or Baum to conclude that DTF would allow them to treat the 2007 TMC transaction as an asset sale on their federal tax return, but as a stock sale on their New York return, because those cases were not decided until 2009. Moreover, insofar as the majority finds that plaintiffs had no forewarning of the change in the Tax Law created by the 2010 amendments, defendants have shown, and *183 plaintiffs have not refuted, that the decisions in Mintz and Baum were inconsistent with DTF’s longstanding policy to treat such transactions as asset sales when the taxpayer so elects. This policy, which was in effect when plaintiffs structured the TMC transaction in 2007,
“is consistent with Article 22 of the Tax Law, under which a resident taxpayer’s New York adjusted gross income starts with his or her Federal adjusted gross income, and a nonresident taxpayer’s New York source income is his or her Federal adjusted gross income derived from New York sources with such income maintaining its Federal character” (Mem in Support of 2010-2011 Executive Budget at 12-13).
Moreover, treating a stock sale as the sale of the assets of the S-corporation for state tax purposes when an IRC § 338 (h) (10) election is made has also been approved by courts in other jurisdictions (see Prince v State Dept. of Revenue, 55 So 3d 273, 281 n 3 [Ala Civ App 2010], cert denied 55 So 3d 287 [Ala 2010]).
While the majority questions whether plaintiffs were aware of DTF’s parallel treatment policy, it is significant to note that plaintiffs could have requested a binding advisory opinion from the DTF prior to engaging in the TMC transaction (see 20 NYCRR 2376.1, 2376.4), but did not do so. Furthermore, plaintiffs have not shown that they would have structured the transaction any differently had they been aware of DTF’s parallel treatment policy.
The majority believes that defendants have not established that a longstanding policy of parallel treatment existed. However, this view conflicts with the explicit statements in the legislative history that such a policy existed, and gives no weight to the affidavit submitted by DTF, which was not refuted. Further support is found in the fact that the administrative decisions in Mintz and Baum cancelled notices of tax deficiency issued by DTF pursuant to that very practice.
Nor do I agree with the majority that the retroactivity period was excessive. New York courts have eschewed the adoption of rigid rules for determining whether the duration of the retroactive period of a tax is unconstitutional (see Matter of Replan Dev., 70 NY2d at 456). Each case must be judged on its particular facts and circumstances and the fact that the 3x/2-year retroactive period in this case is longer than the period of retroactivity found to be excessive in St. James, is not dispositive. In view of the curative nature of the statute, the legislature’s decision *184 to apply the amendments to past open tax years, for which the statute of limitations had not run, was reasonable and rationally related to the legislative goal of minimizing the negative impact of the determinations in Mintz and Baum, which the legislature viewed as erroneous, as well as the legitimate purpose of raising tax revenues. Even if the amendments did not correct a mistake in law, they were supported by the legitimate purpose of fixing a perceived loophole that departed from DTF’s long-established tax practice of holding shareholders to the federal elections they make in structuring S-corporation transactions, and giving the transactions parallel treatment under state law, and the amendments rationally furthered that purpose. Due process does not prohibit the legislature from making the equitable choice to deny plaintiffs the windfall of tax immunity, rather than inflict costs and burdens on other, innocent taxpayers.
Accordingly, I would affirm the order which granted defendants’ motion for summary judgment and denied plaintiffs’ cross motion for summary judgment declaring the retroactive application of the 2010 amendments to Tax Law § 632 (a) (2) unconstitutional, as applied to them.
Acosta, J.E, Moskowitz and Manzanet-Daniels, JJ., concur with Richter, J.; Andrias, J., dissents in a separate opinion.
Judgment, Supreme Court, New York County, entered November 5, 2012, reversed, on the law, without costs, the judgment vacated, it is declared that the retroactive application as to plaintiffs of the 2010 amendment to Tax Law § 632 (a) (2) resulted in a due process violation, and defendants are hereby enjoined from enforcing the notice of deficiency. The Clerk is directed to enter judgment accordingly.

. Although other changes were made to Tax Law § 632 (a) (2), plaintiffs do not challenge those provisions.

. This retroactive period was applicable provided that the statute of limitations for seeking a refund or assessing additional tax was still open.

. The motion court noted that defendants specifically asked for a judgment of dismissal rather than a declaration in their favor.

. Plaintiffs do not challenge the dismissal of the complaint as against Governor Cuomo.

. Defendants also suggest that the TMC transaction was taxable based on language in the previous version of Tax Law § 632 (a) (2). That language, however, merely sets forth the general rules for determining New York source income of a nonresident shareholder of an S-corporation, and contains no specific provision governing transactions like the TMC sale.

. In any event, plaintiffs point out that had they foreseen the change in the law, they could have avoided or minimized any tax liability by structuring the transaction differently or by requiring Sanitors to indemnify them for any subsequent tax assessments.